## UNITED STATES v. MURPHY.

### (District Court, D. Delaware. September 25, 1897.)

**1. DISTRICT COURTS—VACANCY IN OFFICE OF JUDGE—DESIGNATION OF OTHER JUDGE.**

During the continuance of a vacancy in the office of judge of a district court for a district the limits of which are co-extensive with those of the state, no other judge has authority to discharge the functions of that tribunal, and all judicial action must remain in abeyance until the vacancy be filled, unless a judge shall have been designated and appointed pursuant to law to exercise in such district during the vacancy the powers and duties attached to the office of district judge for that district.

**2. SAME.**

Whether or not the statutes of the United States authorize the designation and appointment of a judge for that purpose is undecided. McDowell v. U. S., 16 Sup. Ct. 111, 159 U. S. 596.

**3. SAME — CONSTRUCTION OF STATUTE — STATUS OF PROCEEDINGS DURING VACANCY.**

Section 602 of the Revised Statutes, providing that "when the office of judge of any district court is vacant all process, pleadings, and proceedings pending before such court shall be continued of course until the next stated term after the appointment and qualification of his successor, except," etc., is a remedial statute and should be liberally construed for the advancement of justice; and to this end a fair and reasonable interpretation and construction of its terms and provisions should be resorted to, in aid of its general purpose.

**4. SAME.**

The general purpose of the section is that the administration of justice by a district court shall not, through a vacancy in the office of judge, be defeated or unduly impeded; that causes, civil and criminal, shall, notwithstanding the vacancy, be preserved in their full force and vitality, to be

effectively proceeded in when there is a judge authorized to discharge the functions of the court; that all acts and steps calling for or serving as the basis of judicial action, which otherwise must or should earlier be done or taken in court in the progress of a cause, shall or may be done or taken therein after the termination of the vacancy.

5. SAME—PROCESS—BAIL IN CRIMINAL CASES.

A recognizance taken by a United States commissioner for appearance and answer in a criminal cause is "process" within the meaning of the section; that term including, inter alia, all the means provided by law for compelling one arrested and held on a criminal charge to appear in court, there to be judicially dealt with.

6. SAME.

The words "proceedings pending before such court" are broad enough to include such a recognizance after it has been respited in open court until a day certain.

7. SAME—LIABILITY OF SURETIES.

While it is true that the liability of a mere surety is strictissimi juris, that he has a right to stand upon the terms of his contract, and that its terms are not to be extended by implication, the terms of his contract are not, in a legal sense, necessarily confined to the expressed words clothed in their common-law meaning; for any statute existing when the undertaking was entered into, and applicable to its scope and operation, is incorporated into and becomes a part of the contract, and the obligations created by the statute in its application to the contract have precisely the same legal effect as if expressed therein, and constitute in law a portion of its terms.

8. SAME.

Whatever may be the relevancy of the doctrine of strict construction in favor of sureties to the solution of ulterior questions, a statute having been found to apply to a contract, it has no proper application to the provisions of section 602, for the purpose of ascertaining whether that section applies to a recognizance with surety.

9. SAME—FORFEITURE OF RECOGNIZANCE.

The recognizance in question having been taken for the appearance of the defendant in the district court for the district of Delaware January 12, 1897, and having on that day been respited until March 9 last, and a vacancy through death having occurred in the office of district judge for that district February 8 last, which vacancy continued until May 21 last, and no judge having been assigned to discharge the functions of the said court during the vacancy, and June 8 last being the first day of the "next stated term after the appointment and qualification" of the present incumbent of that office, the recognizance continued in force until that day; and, the defendant having been duly called in open court on that day, and failing to appear, the recognizance was properly declared forfeited.

This was an indictment against Edward Murphy for an alleged violation of the neutrality laws. The case was heard on a motion to set aside the forfeiture of the recognizance for defendant's appearance and answer.

Lewis C. Vandegrift, for the United States.

Herbert H. Ward and Andrew C. Gray, for defendant.

BRADFORD, District Judge. The defendant, Murphy, having been charged with a violation of section 5286 of the Revised Statutes of the United States, embodying certain provisions of the neutrality laws, was arrested by virtue of a warrant issued by a United States commissioner. Afterwards, October 10, 1896, he, with Ralph De Soto as surety, entered into a recognizance in the sum of $1,500 for appearance and answer in this court. The condition of the recognizance, aside from the specification of the offense charged, reads as follows:

"The condition of this recognizance is such that, if the said Edward Murphy shall personally appear before the district court of the United States in and for the district of Delaware aforesaid, at Wilmington, on Tuesday, the 12th day of January, 1897, at 10 o'clock a. m., and then and there to answer the charge of * * *, and then and there abide the judgment of the said court, and not depart without leave thereof, then this obligation to be void; otherwise to remain in full force and virtue." .

A regular term of this court began on Tuesday, January 12, 1897, and on that day the grand jury found an indictment against the defendant for the alleged offence. On the same day he pleaded not guilty to the indictment, and, a petit jury being in attendance, the district attorney asked that the trial of the case immediately proceed. Application was made on behalf of the defendant for a continuance until the next regular April term. This application was denied by the court, but, on motion of the defendant's counsel, Tuesday, March 9 last, was appointed for the trial, and the recognizance was respited until that day; the defendant and his surety consenting thereto in open court. The recognizance had been filed in this court before it was so respited. Hon. Leonard E. Wales departed this life February 8 last, being, at the time of his death, United States district judge for the district of Delaware, creating a vacancy in the office of judge of this court, which was not filled until his successor, the present incumbent, qualified and assumed office, May 21 last. The next regular or stated term of this court after the appointment and qualification of the present incumbent began Tuesday, June 8 last. On that day a petit jury was in attendance and the case against Murphy was called for trial. Thereupon his counsel moved for a continuance until the next following September term. This motion was resisted on the part of the government, and denied by the court, no sufficient ground having been laid. The defendant not being present, he and his surety, at the request of the district attorney, were called in the usual manner and, the defendant not appearing, the recognizance was ordered and declared forfeited. A motion was subsequently made on behalf of the defendant and his surety to set aside the forfeiture of the recognizance, and on that motion full argument was heard. No evidence of any kind was adduced or offered either in support of or in opposition to the motion, other than a paper filed by counsel for the recognizors, purporting to be a physician's certificate, certified to by a commercial agent of the United States in Jamaica, under his official seal, and reading as follows:

"Port Antonio, Jamaica, June 2nd, 1897.
"I certify that Captain Murphy of the S. S. Bermuda, now in Port Antonio, Jamaica, is ill & unable to journey to America.
"Fred G. Grosett, M. D..
"L. R. C. P. & S. Edin.

"I, J. W. Walton, U. S. commercial agent at Port Antonio, Jamaica, do hereby certify that F. G. Grosett is a duly licensed and practicing physician in Port Antonio, and that the above is his true signature.
"J. W. Walton,
"U. S. Coml. Agent."

{ U. S. Commercial Agency, Port Antonio, Jamaica. }

Counsel for the recognizors contend that, as the recognizance was originally for the appearance of the defendant on a day certain, namely, January 12, 1897, and not for his appearance from day to day or from term to term, and as it was respited until another day certain, namely, March 9, 1897, the defendant, after such respite, was bound for his appearance only on the latter day, and, if there was a default, it occurred on that day and not subsequently, and to take advantage of any such default, he should have then been duly called to appear and his failure to appear noted upon the record and the recognizance then declared forfeited, and, this not having been done, he and his surety were discharged from all liability thereafter, and the subsequent declaration of the forfeiture of the recognizance June 8 last was consequently unauthorized and of no effect; and, further, that, even if the recognizance was in force June 8, the defendant's illness was a sufficient excuse for his failure to appear on that day. It is claimed, on the other hand, by the district attorney: first, that the recognizance was continued in force until June 8 by virtue of section 602 of the Revised Statutes of the United States; secondly, that, if that section did not apply, the defendant was bound by the recognizance to appear whenever the court should first be in readiness to proceed with the case; and, thirdly, that no sufficient evidence was adduced to excuse his nonappearance or to justify a remission, in whole or in part, of the penalty incurred through the forfeiture.

With respect to the alleged illness of the defendant and his inability to appear on the day of the forfeiture, it is enough to say that, if the motion now under consideration were an application under section 1020 of the Revised Statutes for the remission of the penalty, the certificate filed, standing alone, would not warrant such remission. It certainly cannot avail the recognizors on this motion. Section 602 is as follows:

"When the office of judge of any district court is vacant, all process, pleadings, and proceedings pending before such court shall be continued of course until the next stated term after the appointment and qualification of his successor; except when such first-mentioned term is held as provided in the next section."

The exception relates to such a vacancy in any district in a state containing two or more districts, and has no application to the case before this court. During the continuance of a vacancy in the office of judge of a district court for a district, the limits of which are coextensive with those of the state, no other judge has authority to discharge the functions of that tribunal, and all judicial action must remain in abeyance until the vacancy be filled, unless a judge shall have been designated and appointed pursuant to law to exercise in such district, during the vacancy, the powers and duties attached to the office of district judge for that district. Whether or not the law authorizes the designation and appointment of a judge for that purpose is a point left in doubt by the supreme court of the United States. McDowell v. U. S., 159 U. S. 596, 16 Sup. Ct. 111. But it is unnecessary to pass upon this question, as no judge was designated and appointed to discharge the functions of this court during the vacancy.

It is claimed on behalf of the recognizors that the above section applies only to civil causes. But the language employed is general and nowhere suggests such a restricted application. Its meaning cannot be so limited without doing violence to its terms. Nor can any principle of public policy be conceived of which requires the section so to be construed. The delay or failure of justice is, to say the least, as great an evil in criminal as in civil causes. The section refers to "all process, pleadings, and proceedings pending before" the court. If this provision applies to a recognizance for appearance and answer, so much of it as has such application becomes in law incorporated into the condition and operates in the same manner and with the same force as if expressly set forth therein. In Von Hoffman v. City of Quincy, 4 Wall. 535, 550, the court said:

"It is also settled that the laws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms. This principle embraces alike those which affect its validity, construction, discharge, and enforcement."

In Walker v. Whitehead, 16 Wall. 314, 317, this doctrine is stated as one of the "axioms in our jurisprudence." Those who enter into contracts are presumed to do so with knowledge of existing law applicable thereto and determining their scope and operation, and with intent to be bound by such law. This principle affects sureties as well as principals in any undertaking. A recognizance, if section 602 applies to it at all, will be continued in force against both surety and principal.

It is urged on behalf of De Soto that section 602 cannot operate as against a surety in a recognizance for appearance and answer on a day certain, without extending the undertaking of the surety or imposing on him a burden which he did not assume upon becoming a party to the contract, and, therefore, that the section does not apply; and, further, that in no event can the section be held applicable, unless its applicability is beyond all doubt, or, to use the language of counsel, unless it be "absolutely clear that the effect was the one which the legislature meant should follow from contracting," and that, if the statute "does not cover the case of suretyship without the possibility of doubt,—you might almost say without the necessity of judicial construction,—if it does not so cover that it is evident to the mind of the layman, it should not be read into the contract." Assent cannot be given to either of these propositions. The application of the section to a recognizance executed after its enactment would not, in any legal sense, either extend the undertaking of the recognizors or impose on them any burden which they did not assume as recognizors. Where a public statute prescribes and defines the scope and effect of a proposed contract, whatever may be its terms, by the execution of the contract the law so applicable to it is, as has been shown, adopted as part of it, and its operation under that law is no extension of or addition to it. It cannot be otherwise. If section 602 expressly and particularly provided that the recognizance should, in the event of a vacancy, be continued in force as against both surety and principal "until the next stated term after the appointment and qualification" of a new judge,

surely no room would be left for argument on this point. So, if that section, upon proper construction, shall be found to have the same meaning conveyed by the express and particular provision above suggested, the same result must follow. The question, then, resolves itself into one of interpretation or construction.

It is not necessary that the applicability of section 602 to a recognizance with surety should be beyond all possibility of doubt. It is believed that no approved authority can be found to support this contention. Such a requirement would be unreasonable and productive of gross incongruity. Certainly no such rule can apply to the case of a recognizance without surety. Any rule of construction which, as applied to that section, might require the continuance of a recognizance without surety, and deny the continuance of a recognizance with surety, is unsound. If it does not apply to a recognizance without surety, what would be its practical operation in the case of a recognizance with surety? Would different rules of construction be applied to the section as between the principal and the surety in the same recognizance? If so, the section might, while continuing the recognizance as to the principal, be inoperative as to the surety, and leave the government without the security of bail. Or would the same rule of construction be applied as between principal and surety? If so, the section might be held to be inoperative as against the accused in one case, while continuing the recognizance of the accused in another and similar case, for the sole reason that the accused in the one case had furnished a surety, and in the other had not. Any rule permitting such glaring inequalities in the administration of criminal justice cannot be tolerated. It is true, as urged in argument, that the liability of a mere surety is strictissimi juris; that he has a right to stand upon the terms of his contract; and that its terms are not to be extended by implication. But the terms of the contract, as here referred to, are not, in a legal sense, necessarily confined to the expressed words clothed in their common-law meaning. To ascertain the terms of the contract, any statute existing when the undertaking was entered into and applicable to its scope and operation must be considered in connection with the language employed in the contract. For, as was said by the court in McCracken v. Hayward, 2 How. 608, 614, "no agreement or contract can create more binding obligations than those fastened by the law, which the law creates and attaches to contracts." Such obligations have precisely the same legal effect as if expressed in the contract. They form a portion of its terms. Whatever may be the relevancy of the doctrine of strict construction in favor of sureties to the solution of ulterior questions, the statute having been found to apply to a contract, it has no proper application to the provisions of section 602 for the purpose of ascertaining whether that section applies to a recognizance with surety. Such a contention seems to involve the inconsistency of assuming that the section operates in case of such a recognizance, in order to show that it cannot so operate; for, unless it enters into and forms part of the contract of the surety, the doctrine of strict construction is irrelevant.

Section 602 is a remedial statute, and should be liberally construed for the advancement of justice. Whether or not a recognizance for

appearance and answer in a criminal cause comes within its purview must be determined by a fair and reasonable interpretation and construction of the terms and provisions of the section, in aid of its general purpose. Endlich, in his Interpretation of Statutes (§ 107), says of remedial acts:

"The object of this kind of statutes being to cure a weakness in the old law, to supply an omission, to enforce a right, or to redress a wrong, it is but reasonable to suppose that the legislature intended to do so as effectually, broadly and completely, as the language used, when understood in its most extensive signification, would indicate."

This doctrine is too well settled to admit of dispute. It is recognized as a canon of the law. The general purpose of section 602 is plain. It is that the administration of justice by a district court shall not, through a vacancy in the office of judge, be defeated or unduly impeded; that causes, civil and criminal, shall, notwithstanding the vacancy, be preserved in their full force and vitality, to be effectively proceeded in when there is a judge authorized to discharge the functions of the court; that all acts and steps, calling for or serving as the basis of judicial action, which otherwise must or should earlier be done or taken in court in the progress of a cause, shall or may be done or taken therein after the termination of the vacancy. It cannot reasonably be supposed that congress, in enacting section 602, in fact intended that it should not apply to a recognizance in a criminal cause. It is not to be assumed that it was the purpose of the lawmaking body to sacrifice substance and retain the shadow; to throw away the kernel and preserve the shell; to continue the writs, pleadings, and other proceedings in a criminal prosecution until after the termination of the vacancy, and at the same time to render them ineffectual by permitting the escape of the accused through the expiration, during the vacancy, of the recognizance, the giving of which was exacted as the condition of his discharge from custody. Such an intention would be irreconcilable with the spirit and broad purpose of the statute. The question, then, is whether the terms and provisions of the section, properly interpreted and construed, are comprehensive enough to include a recognizance for appearance and answer in a criminal cause. As the term "pleadings" is inapplicable, if the recognizance be within the section it must come under "process" or "proceedings." The legal meaning of the word "process" varies according to the context, subject-matter, and spirit of the statute in which it occurs. The process of the court, in its narrowest sense, means the writs and mandates of the court, under the seal thereof. In this sense it is used in sections 911 and 912 of the Revised Statutes, in the former of which it is provided that "all writs and processes issuing from the courts of the United States shall be under the seal of the court from which they issue, and shall be signed by the clerk thereof"; and, in the latter, that "all process issued from the courts of the United States shall bear teste from the day of such issue." In its largest sense, process is equivalent to procedure, including all the steps and proceedings in a cause from its commencement to its conclusion. In Wayman v. Southard, 10 Wheat. 1, 27, Chief Justice Marshall, in delivering the opinion of the

court, spoke of the words "modes of process," as contained in section 2 of the act of congress of September 29, 1789, as follows:

"To 'the forms of writs and executions' the law adds the words 'modes of process.' These words must have been intended to comprehend something more than 'the forms of writs and executions.' We have not a right to consider them as mere tautology. They have a meaning and ought to be allowed an operation more extensive than the preceding words. The term is applicable to writs and executions, but it is also applicable to every step taken in a cause. It indicates the progressive course of the business from its commencement to its termination; and 'modes of process' may be considered as equivalent to modes or manner of proceeding."

Section 587 of the Revised Statutes provides that the circuit court "shall proceed to hear and determine the suits and processes" certified into it from the district court, and refers to "all suits and processes, civil and criminal, depending in said district court, and undetermined." Again, in section 588 provision is made for the hearing and determination by the circuit court of the "suits, pleas, and processes, civil and criminal," "begun" in the district court. The term "process" is used in section 602 in neither its narrowest nor its broadest sense. While not including the whole cause, there can be little or no doubt that it was intended to embrace, among other things, all the means provided by law for compelling one, arrested and held on a criminal charge, to appear in court, there to be judicially dealt with. The section does not in terms restrict "process" to process of the court, and in the absence of such restriction it cannot be so limited by construction. Otherwise, a distinction without any reason to support it would exist between imprisonment under a bench warrant and imprisonment under a commitment by a commissioner. It is true that the word "pending" occurs in the section. In so far as it may apply to process, it is not to be taken in the strict sense, contended for in argument, of pending in court. Such a construction would largely defeat the manifest purpose of the section. A reasonable meaning can be assigned to the term without doing violence to the rules of construction, which will be in harmony with the general scope of the enactment. In People v. Lacombe, 99 N. Y. 43, 49, 1 N. E. 599, the court used the following language, peculiarly applicable to the construction of the section under consideration:

"A strict and literal interpretation is not always to be adhered to; and, where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter. It is the spirit and purpose of a statute which are to be regarded in its interpretation; and if these find fair expression in the statute it should be so construed as to carry out the legislative intent, even although such construction is contrary to the literal meaning of some provisions of the statute."

"Process pending before" the court must be held to include process, in the sense last above mentioned, of which the object has not been fully accomplished,—process which is still in fieri,—process, which, if continued in force, will result either in securing the appearance of the accused to meet the demands of justice or in fastening upon the recognizors liability for his default. Imprisonment under a commitment by a commissioner to answer a criminal charge clearly is process within the meaning of the section. It is only a means of com-

pelling appearance in court. If the accused, instead of going to jail, enters into a recognizance with surety for his appearance and answer, he does not thereby make satisfaction for any crime committed by him, or bar a prosecution therefor. Like imprisonment, it is but a means to secure his appearance. In Ex parte Milburn, 9 Pet. 704, 710, the court said:

"A recognizance of bail, in a criminal case, is taken to secure the due attendance of the party accused to answer the indictment, and to submit to a trial, and the judgment of the court thereon. It is not designed as a satisfaction for the offence, when it is forfeited and paid; but as a means of compelling the party to submit to the trial and punishment which the law ordains for his offence."

Indeed, the giving of bail by the accused for his appearance in a criminal cause is a substitution of custody at the hands of his surety for imprisonment by the jailer. In Taylor v. Taintor, 16 Wall. 366, 371, the court said:

"When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose. The seizure is not made by virtue of new process. None is needed. It is likened to the rearrest by the sheriff of an escaping prisoner. In 6 Mod. 231, it is said: 'The bail have their principal on a string, and may pull the string whenever they please, and render him in their discharge.' The rights of the bail in civil and criminal cases are the same."

An instructive case in this connection is Amis v. Smith, 16 Pet. 303. It furnishes a strong analogy. In that case it was held that a bond with security, as provided for by a statute of Mississippi, conditioned for the forthcoming, on the day appointed for the sale, of personal property levied on by virtue of final process in a civil cause, was part of the final process and as such adopted, by section 3 of the act of congress of May 19, 1828, in a civil cause in a district court of the United States exercising circuit court powers in Mississippi. There, personal property was discharged from the custody of the marshal on an undertaking that it should be delivered to him on the day appointed for the sale. Here, a person charged with a criminal offence is released from arrest on an undertaking that he shall appear and answer in court. There, the object of the forthcoming bond was that the property should be delivered to the marshal to be dealt with according to law. Here, the object of the recognizance is that the accused shall deliver himself or be delivered to the court to be dealt with according to law. There, the forthcoming bond was substituted for the custody of the property by the marshal. Here, the recognizance is substituted for imprisonment of the accused by the jailer. The court said:

"If the forthcoming bond is applicable at all to the proceedings of the courts of the United States, it must be in the character of final process. * * * We think this section of the act of 1828, adopted the forthcoming bond in Mississippi as part of the final process of that state, at the passage of the act. And we understand by the phrase, 'final process,' all the writs of execution then in use in the state courts of Mississippi which were properly applicable to the courts of

the United States; **and** we understand the phrase, 'the proceedings thereupon.' to mean, the exercise of all the duties of the ministerial officers of the states, prescribed by the laws of the state, for the purpose of obtaining the fruits of judgments. And among these duties, is to be found one prescribed to the sheriff, directing him to restore personal property levied on by him, to the defendant, upon his executing a forthcoming bond according to law, and the further duty to return it to the court forfeited, if the defendant fail to deliver the property on the day of sale, according to the condition of the bond. These are certainly proceedings upon an execution, and therefore the forthcoming bond must be regarded as part of the final process. It aids materially in securing the payment of the money to satisfy the judgment, and it is part of the process by which the plaintiff is enabled to obtain the payment of the money secured to him by the judgment. But is this forthcoming bond a judgment as well as process? * * * The proceeding which produced this bond was purely ministerial; the judicial mind was in no way employed in its production. It does not, then, possess the attributes of a judgment, and ought, therefore to be treated in this court as final process, or, at least, as part of the final process. * * * Regarding the forthcoming bond as part of the process of execution, a refusal to quash the bond is not a judgment of the court, and much less is it a final judgment; and, therefore, no writ of error lies in such a case."

Attention was drawn in the argument to section 587 of the Revised Statutes, which provides that, where suits and processes, with the proceedings thereon, are certified from a district court into a circuit court on account of disability of the district judge, "all bonds and recognizances taken for, or returnable to, such district court, shall be held to be taken for, and returnable to, said circuit court, and shall have the same effect therein as they could have had in the district court to which they were taken," and it was urged on behalf of the recognizors that, as provision was made for recognizances in express terms in that section, they would have been expressly referred to in section 602 if the latter section had been intended to apply to them; and that, as no such express reference is contained therein, the section cannot be held applicable to them. But no such inference can justly be drawn from section 587. Its purpose with respect to recognizances was, under the circumstances therein set forth, to make them operative in a court other than that for which they were taken or to which they were returnable according to their express terms. Such a provision was probably necessary to accomplish the intended result. Under section 602, however, a recognizance taken for or returnable to a district court is not diverted from it, but, in case of a vacancy, is simply continued in force, and may well be included in the express provision for the continuance of process.

In view of the foregoing considerations, the recognizance entered into by the defendant and his surety must be held to be process within the meaning of section 602, and as such, by operation of law, continued in force until the last regular June term of this court. The fact that the recognizance was respited can in no wise affect the result.

It may further be observed that the words "proceedings pending before such court" are in themselves broad enough to include the recognizance in question. It was filed in court and thereafter respited until March 9, the defendant and his surety both consenting thereto in open court. The legal effect of this proceeding was to alter

the condition of the recognizance by enlarging the time for the appearance of the defendant. Thus, the recognizors in open court undertook that the defendant should appear in court on the day to which the recognizance was respited. On that day the vacancy existed. The recognizance, as respited, was a proceeding pending before the court during the vacancy. In Com. v. Cayton, 2 Dana, 138, it was held by the court of appeals of Kentucky that a recognizance for appearance in a criminal cause was "a matter depending in court," and that a statute of that state on the subject was broad enough to include it. The court said:

"By his recognizance, rightly understood, Cayton undertook to appear in court on the first day of the first court that should be held; and, therefore, not having been exonerated by the nonattendance of the judge at the first term, it was his duty to appear on the day on which the motion was made by the attorney for the commonwealth; for that was the first day of the first court succeeding the date of his recognizance. But, if there could be any serious doubt as to the correctness of this interpretation of the condition of the recognizance, the ninth section of the act of 1798. Dig. 370, should be deemed sufficient to show that, by operation of law, the time for appearance was postponed. The recognizance was 'a matter depending in court.'"

Therefore, if it should be assumed that the recognizance was not continued in force as "process," it retained its vitality by virtue of section 602 as a part of the "proceedings pending before such court." Examination has failed to disclose the existence of any statute which, under the circumstances of this case, in any manner controlled or modified the proper operation of that section upon the recognizance in question. Even were it conceded that the statutes of the United States authorized the assignment of a judge to exercise the powers and duties of this court during the vacancy,—a point by no means clear,—the result would be the same. No judge was assigned. The recognizance, therefore, was continued in force until the next stated term after the appointment and qualification of the present incumbent, and, the defendant having failed to appear in this court on the first day of that term. it was then and there duly and legally ordered and declared forfeited.

The conclusions reached render it unnecessary to the decision of the motion before the court to pass upon the question whether in the absence of section 602 the recognizance would have been in force on the first day of the last June term. It may be remarked that the operation of that section in the case of a recognizance adds but little to the liability which would attach to a surety therein where a vacancy does not exist; for, the recognizance remaining in force, the surety has the right at any time before a default to relieve himself of all liability by the surrender of his principal. The motion to set aside the forfeiture is denied.