12 F.2d 660 (1926)
In re PRESS PRINTERS & PUBLISHERS, Inc.
BABCOCK PRINTING PRESS MFG. CO.
v.
MURPHY.
No. 3368.
Circuit Court of Appeals, Third Circuit.
May 21, 1926.
*661 A. P. Bachman, of New York City, for appellant.
Leon E. Cone, of Morristown, N. J., for appellee.
Before BUFFINGTON and WOOLLEY, Circuit Judges, and CLARK, District Judge.
CLARK, District Judge.
This is an appeal from the District Court of the District of New Jersey, sitting as a court of bankruptcy. At the outset we feel constrained to comment upon certain practices revealed by the record in this case. We hope that they are not typical of the administration of bankruptcy in the district of New Jersey. Dates are emphasized, in the hope that a reference thereto at this time may have a salutary effect in the future. The meager character of the record on appeal has necessitated our going to the docket entries of the District Court and to the files of the referee in bankruptcy, before whom the case came in limine.
On January 30, 1923 (three years ago), an involuntary petition in bankruptcy was filed in the District Court against Press Printers & Publishers, Inc., job printers and publishers in Morristown, N. J. The same day an attorney at law of New Jersey was appointed receiver, we assume by authority of section 2 of the Bankruptcy Act (U. S. Comp. Stat. § 9586). The petition upon which his appointment was made assigns two reasons therefor: First, that such receiver is necessary in order to effect insurance. This thought is based upon an entirely mistaken conception of the legal effect of the mere filing of a petition in bankruptcy. In law, the title, though defeasible, remains in the bankrupt until the trustee's qualification. Remington on Bankruptcy, § 1381. An insurance company, therefore, may not raise the defense that the title has been transferred. Fuller v. New York Fire Ins. Co., 184 Mass. 12, 67 N. E. 879; Gordon v. Mechanics' & Traders' Ins. Co., 22 Am. Bankr. Rep. 649, 120 La. 441, 45 So. 384, 15 L. R. A. (N. S.) 827, 124 Am. St. Rep. 434, 14 Ann. Cas. 886.
The second reason assigned for the exercise of powers which section 2 of the Bankruptcy Act limits by the words "absolutely necessary for the preservation of estates" is in our opinion equally untenable. It is simply that the assets are in the control of the alleged bankrupt. There is no allegation that such control will result in the dispersal or destruction thereof at the hands of dishonest agents of the bankrupt company.
It does not appear that any notice of the petition for the appointment of the receiver was given to the alleged bankrupt or the creditors who might be interested therein. We are not blind to the occasional necessity for the appointment of a temporary receiver without notice; for instance, to prevent the fraudulent disposal of assets, or to preserve for the estate such assets as are perishable, either physically or legally. The facts moving the court to dispense with the otherwise essential notice should be set forth in full in a sworn petition. In this way only is it possible to punish an abuse of the court's confidence by prosecution for perjury. Collier on Bankruptcy (13th Ed.) p. 72. We said in Latimer et al. v. McNeal, 142 F. 451, 73 C. C. A. 567:
"Furthermore, there occur well-recognized instances of such urgency as to dispense with notice; as where irreparable loss or injury is impending, or where notice might defeat the very purpose of the receivership. We are, indeed, clearly of opinion that, except in rare cases, a receiver ought never to be appointed without notice to the alleged bankrupt."
Attention of the District Judges in New Jersey is called to the provision contained in section 2 of the Bankruptcy Act authorizing the appointment of the marshals of their court for the preservation of estates. It is suggested that the facilities offered by the marshal's office might be made available for the purpose of the economical custody of the property of alleged bankrupts. See In re Adams Sartorial Art Co. (D. C.) 101 F. 215.
On February 21, an order permitting the receiver to retain another attorney at law of New Jersey as his solicitor was entered. In this connection, attention is called to rule 32 of the Rules in Bankruptcy of the District Court in New Jersey, which provides that, "where a solicitor has been appointed receiver or trustee, no order authorizing the employment of counsel shall be made unless it clearly appears that litigation or other cause makes the same necessary or advisable." We believe that this is a wise regulation, and one which should be strictly adhered to by the court which promulgated it.
In the instant case there is no showing, in the petition requesting permission to retain counsel, that such authorization was in any way necessary. It is merely suggested that an examination under section 21a of the Bankruptcy Act (Comp. St. § 9605) is to be held. We imagine that the receiver would be unwilling to confess his incompetence to conduct such an examination. We may say, also, that it is difficult for us to imagine any need for the appointment of two lawyers to solve *662 the legal problems incident to the ordinary bankruptcy matter.
The reference under section 21a appears from the order to have been made to the referee as special master. Such reference is directly authorized by the rules of the District Court for the District of New Jersey. See rule 16d. Attention is directed to the express wording of section 21a, which permits persons to appear for examination "in court or before a referee or the judge of any state court." This section must be read in connection with section 72 of the Bankruptcy Act (U. S. Comp. Stat. § 9656), which forbids a referee to receive any compensation for his services "in any form or guise other than that expressly authorized by the Bankruptcy Act." It would seem, therefore, that the rule of the District Court and the practice thereunder are in direct violation of law. We freely concede that the present compensation of referees may be inadequate, in view of the important service rendered by them. We believe that the remedy lies in amendment of the Bankruptcy Act.
On March 19, having been served by publication and having failed to appear and plead, the Press Printers & Publishers, Inc., was adjudicated a bankrupt under subsection (e) of section 18 of the Bankruptcy Act (U. S. Comp. Stat. § 9602). The same day the case was referred to one of the referees of that court by a deputy clerk of the District Court.
We are frankly curious about this method of reference and are inclined to question its propriety. Subsection (f) of section 18 of the Bankruptcy Act permits a reference by the clerk to the referee before adjudication, "if the judge is absent from the District." This obviously in order that the referee may then make the adjudication, and thus there will be no delay due to a judge's absence. We can find no provision for reference after adjudication, other than that contained in section 22 (Comp. St. § 9606). This reads in part as follows: "After a person has been adjudged a bankrupt the judge may cause the trustee to proceed with the administration of the estate, or refer it generally to the referee or specially with only limited authority to act in the premises or to consider and report upon specified issues."
The above language seems to us sufficiently explicit in requiring the reference to be made by the judge. We can, at any rate, think of no phraseology more appropriate to that purpose. We are correspondingly, then, disturbed by form 14 appended to the General Orders in Bankruptcy, promulgated by the United States Supreme Court (General Orders in Bankruptcy, October Term, 1898, as amended, and also prescribed by rule 22 of the Rules in Bankruptcy for the District of New Jersey). This and others of the forms prescribed by these same General Orders, namely, forms 5, 8, 12, 30, 54, 62, and 63, conclude in the familiar style of a teste as follows:
"Witness the Honorable ____, judge of the said court, and the seal thereof, at ____, in said district, on the ____ day of ____, A. D. 19 ___.
 "______, Clerk.
 "[Seal of the Court.]"
The only authority for a teste by the judge and signature by the clerk in the United States courts is found in section 1534 of the Compiled Statutes (R. S. § 911; Act of May 8, 1792). To include these Orders in Bankruptcy in the terms "writs and process" of that statute seems to us a strained construction, to say the least. See U. S. v. Murphy (D. C.) 82 F. 893. Assuming, however, that section 1534 may be so interpreted, we are still confronted with a more serious problem in the doctrine of the constitutional separation of powers.
Concededly the teste does not make the document to which it is appended the act of the judge. It is a matter of form, and its purpose is to give character and dignity thereto. Reynolds v. Damrell, 19 N. H. 394; Ripley v. Warren, 2 Pick. (Mass.) 592, 594; Union Tool Co. v. Wilson, 259 U. S. 107, 113, 42 S. Ct. 427, 66 L. Ed. 848. The order of reference remains, then, the act of the clerk, and not of the judge.
It is settled that a clerk of court is a ministerial officer and cannot exercise judicial functions. Washington National Bank v. Williams, 188 Mass. 103, 74 N. E. 470; Moneyweight Scale Co. v. Friedman, 79 N. J. Law, 214, 74 A. 270. And a statute conferring judicial powers upon a clerk has been held unconstitutional. Cleveland R. Co. v. People, 212 Ill. 638, 72 N. E. 725; Gregory v. State, 94 Ind. 384, 48 Am. Rep. 162. Whether the order of reference in the case at bar can be properly made by the clerk would depend, then, on whether such order is a ministerial act. The distinction between judicial and ministerial acts is clearly drawn and has often been adverted to in the cases. It has been thus stated:
"The distinction between ministerial and judicial and other official acts seems to be that where the law prescribes and defines the *663 duty to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment the act is ministerial, but where the act to be done involves the exercise of discretion or judgment in determining whether the duty exists it is not to be deemed merely ministerial." Life & Fire Ins. Co. v. Wilson, 8 Pet. 291, 8 L. Ed. 949.
It would be our view that the selection from among a number of a particular referee to administer a particular estate in bankruptcy involves the exercise of discretion and judgment. Upon a wise selection in the circumstances of individual cases, the successful administration of bankruptcy may very well depend. Furthermore, Congress may well have specifically desired that the judges keep a closer track of bankruptcy matters by their exercising the powers of reference assigned to them by section 22a of the Bankruptcy Act (U. S. Comp. Stat. § 9606).
The General Orders of the Supreme Court, above referred to, would indicate that that august body holds a different view from the one we have just expressed. It is true that the general orders and forms do not have the force and effect of law. West Company v. Lea, 174 U. S. 590, 19 S. Ct. 836, 43 L. Ed. 1098. Furthermore, wherever there is a conflict, the law, of course, controls. In re Isaacson (D. C.) 161 F. 779. Nevertheless, the greatest weight is to be given to the views of the United States Supreme Court, even when expressed elsewhere than in decided cases. For that reason, we shall not pass upon this method of reference by a deputy clerk of the court until it is directly raised by objections to its sufficiency.
The next step in the proceedings was the sale on April 12, 1923, of the assets of the bankrupt company free and clear of liens  lien to attach to the proceeds. We are glad to note that the petition requesting such sale sets forth that the assets exceed the amount of the valid liens. Otherwise, of course, such sale results in no benefit to any creditors, but simply saves the lienholder the cost of foreclosure. In re Cogley (D. C.) 107 F. 73; In re Fayetteville Wagon Wood & Lumber Co. (D. C.) 197 F. 180.
In answer to the notice of sale, the present petitioner, the Babcock Printing Press Manufacturing Company, stated that it was the conditional vendor of a printing press installed on the premises of the bankrupt at Morristown, the bill of sale of which was duly recorded. On April 16th a notice for the first meeting of creditors was sent out, and on May 7th the receiver heretofore appointed was elected trustee. This first meeting of creditors was held 48 days after the adjudication, and not, therefore, within the 30 days prescribed in section 55 of the Bankruptcy Act (U. S. Comp. Stat. § 9639).
On July 9th, another meeting of creditors was held, at which those creditors who claimed a priority were notified to present their claims. On July 10th, the petitioner in this cause filed an affidavit, claiming a lien on the proceeds of the sale to the amount of the purchase price of the printing press, which was still unpaid; this on the ground, heretofore advanced, that it was the owner of said press. Some correspondence between the referee and the attorney for the creditor petitioner ensued upon this claim. The only new fact developed therein was that the document of title under which the Press Printers claim was recorded on April 10, 1920, in Book E of Chattel Mortgages in the Morris county clerk's office, and that there was no refiling. There followed complete inaction upon the part of the referee in so far as the claim of the Babcock Company was concerned. He ordered the payment of various other priority claims, but neither disallowed nor ordered the payment of petitioner's. He should, of course, have made some written order on the premises. In re Branner, 9 F.(2d) 883, 886.
On September 14, 1923, the Babcock Printing Press Manufacturing Company petitioned the District Court for a writ of mandamus, commanding the referee and trustee in bankruptcy to pay it the sums of money due on the printing press. The hearing on this petition was held on October 1, 1923, and briefs were filed one week later. On December 15, 1924, the learned District Judge filed a memorandum of decision, denying the petition for the writ of mandamus. On June 9, 1925, a final order was entered in the cause in accordance with the judge's memorandum, and on the same day the present appeal to this court was taken.
Before proceeding to a further consideration of the legal question presented by the appeal proper, it may not be out of order to observe that the trustee has a balance of $932.43 on hand. After further allowances for the costs of this appeal, and for the legal steps necessarily ensuing upon its decision, it is obvious that, in view of the unpaid claims of $5,103.31, the general creditors may have won a somewhat Pyrrhic victory.
Counsel for the trustee in bankruptcy argued that the writ of mandamus should be *664 denied, because that writ cannot be substituted for the ordinary processes of review and appeal. To this reasoning the learned District Judge assented. We cannot quarrel with the abstract proposition of law involved in such a finding. It has been well said by Circuit Judge Rogers, speaking for the Circuit Court of Appeals in the Second Circuit, in American Engineering Co. v. Metropolitan By-Products Co., Inc., 280 F. 677: "We may be permitted to say that the writ of mandamus is a prerogative writ, and one of the highest known to our jurisprudence. It is issued where there is no other means of obtaining justice within the reach of the petitioner. It cannot be resorted to to subserve the purpose of an appeal or writ of error."
So, also, Spelling on Extraordinary Relief (2d Ed., 1901) § 1390: "Mandamus, being an extraordinary remedial process, should never be employed where the party seeking it may obtain redress in the ordinary course of judicial proceedings in the one case by original action, and in the other by employing the means afforded by law for the correction of errors after a suit has been already instituted. In the latter case, this common reason is reinforced by the additional one of the inconvenience and confusion which would result from allowing litigants to resort to the appellate courts for correction of errors in advance of opportunity on the part of the lower court to correct its errors before final judgment and upon motion for new trial, and of the appellate court to review the entire record in the regular way, when it can enjoy the advantage of having the whole case before it." And see Maryland v. Soper, 46 S. Ct. 185, 70 L. Ed. ___.
Our difficulty in subscribing to this method of disposing of the case is that it is not in accordance with the facts. It is clear that the referee has never made any order which can be reviewed in any manner. He has in fact consistently refused to pass upon the claim of the Babcock Company. The petition alleges this refusal to act, and then prays that the District Court command the referee to act, and to act in a certain way, namely, to pay the petitioner the certain sums of money alleged to be due on its printing press. This is obviously not an attempt to review, which by its very nature assumes action which it is desired to correct.
As we are to find that the petition as presented contains an equally fundamental misconception, the reason for its dismissal may not seem to be very important. However, we think it is clear that, if counsel had realized the real effect of the petition, it might have been amended, and a proper case for the consideration of the District Courts on the merits made out.
The subversive error that we find in the petition, in the form in which it is presented to us, is this: If the petition had been properly drawn, it would have been illustrative of the earliest form of the writ of mandamus. The writ of procedendo ad judicium was the earliest remedy for the refusal or neglect of justice on the part of the courts. It was an original writ, issuing out of chancery to the judges of any subordinate court, commanding them in the king's name to proceed to judgment, but without specifying any particular judgment. In case of disobedience or of neglect on the part of the judges to whom it was addressed, or refusal by them to act, they were liable to punishment for contempt.
Inherently, the most important limitation on this jurisdiction is that the writ of mandamus is not a proper remedy to control or direct the decisions of inferior courts in matters wherein they have judicial cognizance and discretion. In other words, so far as the writ affects the action of inferior courts, its use is not to be extended to compel the rendition of a particular judgment, in accordance with the views of a higher court. Kimberlin v. Commission to Five Civilized Tribes (1900) 104 F. 653, 44 C. C. A. 109; Minnesota Moline Plow Co. v. Dowagiac Manufacturing Co. (1903) 126 F. 746, 61 C. C. A. 352, writ of certiorari denied 195 U. S. 630, 25 S. Ct. 788, 49 L. Ed. 352. Any other doctrine would be in effect the substitution of the decision of the superior for that of the subordinate or the inferior tribunal. Interstate Commerce Commission v. United States ex rel. Members of Waste Merchants' Ass'n of New York, 260 U. S. 32, 43 S. Ct. 6, 67 L. Ed. 112. So, in asking that the referee in bankruptcy be commanded to decide petitioner's claim in his favor, an attempt has been made to control the judicial discretion of the referee, a judicial officer. It must, under the authorities cited above, fail.
There is a further and perhaps equally fundamental reason why this is not a proper case for mandamus. A realization of this underlying defect would equally, we feel, have resulted in an earlier disposition of the case. It is elementary that this prerogative writ will not issue if there is any other adequate remedy at law. Spelling on Extraordinary Relief, § 1368. That there was such other remedy in the case at bar seems so plain that it hardly requires more than statement. The District Court, upon motion, could have transferred the cause to another referee, under the express *665 terms of subsection (b) of section 22 of the Bankruptcy Act (U. S. Comp. Stat. § 9606). Equally, the referee to whom the case was originally referred might by order have been compelled to proceed to its decision. Cumberland v. North Yarmouth, 4 Greenl. (Me.) 459; People v. Randall, 37 Mich. 473.
In accordance with this opinion, it may become necessary for the referee and the District Judge below to pass upon the meritorious questions involved in the claim of the Babcock Company. We do not, of course, wish to decide them until they are properly presented to us. However, in the hope that as little further time as possible be spent upon this litigation, we are going to suggest what seem to us the principal legal problems to be resolved. As a matter of fact, the learned District Judge, although not strictly necessary to his decision, passed upon at least some of them.
He held the paper writing under which the bankrupt held the Babcock Company's printing press to be a conditional bill of sale, rather than a lease, as was claimed by that company. This had already been the decision of our brethren of the Fourth circuit, passing upon an instrument of the same company in hæc verba. Groner v. Babcock Printing Press Manufacturing Co., 267 F. 822. Another interesting case, discussing the somewhat palpable attempts of manufacturers of all kinds to obtain the advantages without the disadvantages of ownership of their products, is Burroughs Adding Machine Co. v. Bogdon (C. C. A.) 9 F.(2d) 54, 6 Am. Bankr. Rep. (N. S.) 798. A third possible legal interpretation of the instrument is that it is a chattel mortgage. It was, at any rate, so recorded. If the instrument is a lease, the title to the printing press is in the petitioner, and its claim for priority is a valid one. If, on the other hand, it is either a chattel mortgage or a conditional bill of sale, we are faced with the further and complicated problems of record.
In 1919, New Jersey adopted the Uniform Conditional Bill of Sale Act, sections 4, 5, and 11 of which provide as follows:
"Sec. 4. Every provision in a conditional sale reserving property in the seller after possession of the goods is delivered to the buyer, shall be valid as to all persons, except as hereinafter otherwise provided.
"Sec. 5. Every provision in a conditional sale reserving property in the seller, shall be void as to any purchaser from or creditor of the buyer, who, without notice of such provision, purchases the goods or acquires by attachment or levy a lien upon them, before the contract or a copy thereof shall be filed as hereinafter provided, unless such contract or copy is so filed within ten days after the making of the conditional sale. * * *
"Sec. 11. The filing of conditional sale contracts provided for in sections five, six and seven shall be valid for a period of three years only. * * * The validity of the filing may in each case be extended for successive additional periods of one year from the date of refiling by filing in the proper filing district a copy of the original contract within thirty days next preceding the expiration of each period, with a statement attached signed by the seller, showing that the contract is in force and the amount remaining to be paid thereon."
P. L. N. J. 1919, p. 461.
The contract between the Babcock Printing Press Manufacturing Company and the Press Printers & Publishers, Inc., concerning the printing press, was signed on November 28, 1919. The printing press was installed and in running order on May 1, 1920. As we have said, the Babcock Company had the instrument covering the printing press recorded as a chattel mortgage on April 10, 1920. The bankruptcy petition was filed January 30, 1923. There is no proof, either before the court below or in the present record, of the date on which the debts of the particular creditors arose.
These facts raise several interesting questions: First, is the recording of the conditional bill of sale as a chattel mortgage sufficient to comply with the sections of the Conditional Sales Act above referred to? There is no reference to this question anywhere in the pronouncements of the court, the referee, or of counsel. This makes it uncertain, therefore, whether such record was assumed to be sufficient, or whether the exact place of the recording was not discovered. Both the Chattel Mortgage Act of New Jersey and the Conditional Sales Act provide for record books to be kept in the county clerk's office and to be indexed under the names of both parties to the instrument. Both separate books and separate indexes were as a matter of fact kept in the county clerk's office in Morristown, the place where this instrument was recorded. A search in one index would, of course, not reveal any incumbrance recorded in the other. It would seem, therefore, that an intending creditor would be entitled to rely upon the particular record, unless, as a matter of fact, he had searched both indexes, and had therefore actual notice.
An elaborate argument was made in the court below and in this court that the recording section of the Conditional Sales Act operated *666 from the date of the installation of the printing press, rather than from the date of the making of the contract. This would seem to be in direct contradiction of the express terms of section 5 above cited. No cases were cited in support thereof. Attention is called, however, to In re Gosch, 126 F. 627, 61 C. C. A. 363, which gives some support to such a theory. It is to be noticed in that case, however, the Conditional Sales Act of Georgia therein involved requires the record within 30 days from the date of the bill of sale, and does not have any reference to the making of the contract of sale.
As we have seen, the instrument was recorded long before the date of the filing of the bankruptcy petition. In Bailey v. Baker Ice Machine Co., 239 U. S. 268, 36 S. Ct. 50, 60 L. Ed. 275, the United States Supreme Court held that the lien of a creditor, under the provisions of a Conditional Sales Act similar in terms of the Uniform Conditional Sales Act, dated from the filing of the bankruptcy petition. If this is so, the recording in the case at bar would seem to be valid, unless failure to record within the 10-day period prescribed in section 5 above cited makes the conditional sale absolutely void.
That this is the view of the learned judge appears clearly in his memorandum filed in this court. As we read the case of Morey & Co. v. Schaad, 98 N. J. Law, 802, 121 A. 622, the Court of Errors and Appeals has expressed a contrary opinion, and holds the 10-day period to be one of grace rather than of limitation. To the same effect see Professor Williston on Sales, p. 1867, and also Uniform Laws Annotated, vol. 2, p. 9. In view of these authorities, and of the long-established policy of recording acts, we would suggest reconsideration of this question by the referee and the court below.
Section 11 of the Uniform Conditional Sales Act requires a refiling at the expiration of 3 years. The court below seemed to feel that this was an additional reason for the invalidity of the instrument, considered as a conditional bill of sale. The purpose of the requirement of refiling was to obviate the mechanical effort of a search through the record books covering a period of more than 3 years. Williston on Sales, p. 1877. We should therefore think that such refiling is applicable only to creditors whose liens attach after the 3-year period  an impossibility in this case, since the petition in bankruptcy was filed, as we have seen, on January 30, 1923.
If, on the other hand, the instrument should be in legal effect considered a chattel mortgage, it must be determined whether or not the view of the United States Supreme Court in the Bailey v. Baker Case is applicable to the Chattel Mortgage Act of New Jersey (P. L. 1902, p. 487). Unless the wording of the two acts is substantially different, logic would seem to require a similar interpretation. It has been so held. Martin v. Commercial National Bank, 245 U. S. 513, 38 S. Ct. 176, 62 L. Ed. 441. The Chattel Mortgage Act of Georgia, interpreted in the above-cited case, postpones unrecorded chattel mortgages to "all other liens created or obtained, or purchases made prior to the actual record of the mortgage." Civ. Code Ga. 1910, § 3260. This language is in substance the same as that of section 5 of the New Jersey Conditional Sales Act quoted above. The New Jersey Chattel Mortgage Act, however, by sections 4 and 8, provides that a chattel mortgage to be invalid against creditors of the mortgagor and against subsequent purchasers and mortgagees, must be recorded, or else be followed by an immediate delivery, etc. These sections appear to make it immaterial whether or not the creditor who seeks to establish a preference over the unrecorded chattel mortgage has or has not acquired a lien upon the chattel.
The dates at which the various creditors' claims arose, then, become important, as we have seen there is no proof in the present record as to these dates. Further, assuming some of these claims arose before and some after the date of the actual record, an interesting question as to whether the chattel mortgage may be avoided for the benefit of all the creditors is presented. Bollschweiler v. Packer House Hotel Co., 83 N. J. Eq. 459, 91 A. 1027, affirmed 84 N. J. Eq. 502, 95 A. 549. But see Mullen, Trustee of William H. Moore, v. Martha E. Warner, 11 F.(2d) 62, Am. Bankr. Rep. vol. 7, No. 2, 95.
We regret that it has seemed necessary to go into these matters at such great length. Our labors and those of the learned District Judge have been greatly increased by the failure of counsel to call our attention to any of the cases cited in this opinion. We venture to express the hope that in future the bankruptcy practice in the district of New Jersey will evince a more careful attitude on the part of those concerned therewith. It is too important, both to the courts and to the business world generally, to be neglected, or to be made the subject of indifferent and unthoughtful handling.
The order denying the petition is affirmed.