## WEST COMPANY v. LEA.

### CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 755. Submitted May 1, 1899.—Decided May 22, 1899.

As a deed of general assignment for the benefit of creditors is made by the bankruptcy act alone sufficient to justify an adjudication in involuntary bankruptcy against the debtor making such deed, without reference to his solvency at the time of the filing of the petition, the denial of insolvency by way of defence to a petition based upon the making of a deed of general assignment is not warranted by the bankruptcy law.

THE statement of the case will be found in the opinion of the court.

*Mr. W. W. Henry* for appellant.

*Mr. Emmett Seaton* and *Mr. J. H. Ralston* for appellees.

MR. JUSTICE WHITE delivered the opinion of the court.

The facts stated in the certificate of the Circuit Court of Appeals are substantially as follows:

Lea Brothers & Company and two other firms filed, on December 18, 1898, a petition in the District Court of the United States for the Eastern District of Virginia, praying that an alleged debtor, the George M. West Company, a corporation located in Richmond, Virginia, be adjudicated a bankrupt, because of the fact that it had, on the date of the filing of the petition, executed a deed of general assignment, conveying all its property and assets to Joseph V. Bidgood, trustee. The George M. West Company pleaded denying that at the time of the filing of said petition against it the corporation was insolvent, within the meaning of the bankrupt act, and averring that its property at a fair valuation was more than sufficient in amount to pay its debts. The prayer was that the petition be dismissed. The court rejected this plea, and adjudicated the West Company to be a bankrupt. The cause was referred to a referee in bankruptcy, and certain creditors secured in the deed of assignment, who had instituted proceedings in the law and equity court of the city of Richmond, under which that court had taken charge of the administration of the estate and trust under the deed of assignment, were enjoined from further prosecuting their proceedings, in the state court, under said deed of assignment. From this decree an appeal was allowed to the Circuit Court of Appeals for the Fourth Circuit. On the hearing of said appeal the court, desiring instructions, certified the case to this court. The certificate recites the facts as above stated, and submits the following question:

"Whether or not a plea that the party against whom the petition was filed ' was not insolvent as defined in the bankrupt act at the time of the filing of the petition against him' is a valid plea in bar to a petition in bankruptcy filed against a debtor who has made a general deed of assignment for the benefit of his creditors."

The contentions of the parties are as follows: On behalf of the debtor it is argued that under the bankrupt act of 1898 two things must concur to authorize an adjudication of involuntary bankruptcy, first, insolvency in fact, and, second, the commission of an act of bankruptcy. From this proposition the conclusion is deduced that a debtor against whom a proceeding in involuntary bankruptcy is commenced is entitled entirely irrespective of the particular act of bankruptcy alleged to have been committed, to tender, as a complete bar to the action, an issue of fact as to the existence of actual insolvency at the time when the petition for adjudication in involuntary bankruptcy was filed. On the other hand, for the creditors it is argued that whilst solvency is a bar to proceedings in bankruptcy predicated upon certain acts done by a debtor, that as to other acts of bankruptcy, among which is included a general assignment for the benefit of creditors, solvency at the time of the filing of a petition for adjudication is not a bar, because the bankrupt act provides that such deed of general assignment shall, of itself alone, be adequate cause for an adjudication in involuntary bankruptcy, without reference to whether the debtor by whom the deed of general assignment was made was in fact solvent or insolvent.

A decision of these conflicting contentions involves a construction of section 3 of the act of July 1, 1898, c. 541, 30 Stat. 546. The full text of the section in question is printed in the margin.[1]

---

[1] SEC. 3. Acts of Bankruptcy. — a. Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed or removed, or permitted to be concealed or removed, any part of his property with intent to hinder, delay or defraud his creditors, or any of them; or (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; or

.It will be observed that the section is divided into several paragraphs, denominated as *a, b, c, d* and *e.* Paragraph *a* is as follows:

---

(3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged such preference; or (4) made a general assignment for the benefit of his creditors; or (5) admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground.

*b.* A petition may be filed against a person who is insolvent, and who has committed an act of bankruptcy within four months after the commission of such act. Such time shall not expire until four months after (1) the date of the recording or registering of the transfer or assignment when the act consists in having made a transfer of any of his property with intent to hinder, delay or defraud his creditors, or for the purpose of giving a preference as hereinbefore provided, or a general assignment for the benefit of his creditors, if by law such recording or registering is required or permitted, or, if it is not, from the date when the beneficiary takes notorious, exclusive or continuous possession of the property unless the petitioning creditors have received actual notice of such transfer or assignment.

*c.* It shall be a complete defence to any proceedings in bankruptcy, instituted under the first subdivision of this section, to allege and prove that the party proceeded against was not insolvent, as defined in this act, at the time of the filing the petition against him, and if solvency at such date is proved by the alleged bankrupt, the proceedings shall be dismissed, and, under said subdivision one, the burden of proving solvency shall be on the alleged bankrupt.

*d.* Whenever a person against whom a petition has been filed, as hereinbefore provided under the second and third subdivisions of this section, takes issue with and denies the allegation of his insolvency, it shall be his duty to appear in court on the hearing, with his books, papers and accounts, and submit to examination, and give testimony as to all matters tending to establish solvency or insolvency, and, in case of his failure to so attend and submit to examination, the burden of proving his solvency shall rest upon him.

*e.* Whenever a petition is filed by any person for the purpose of having another adjudged a bankrupt, and an application is made to take charge of and hold the property of the alleged bankrupt, or any part of the same, prior to the adjudication and pending a hearing on the petition, the petitioner or applicant shall file in the same court a bond with at least two good and sufficient sureties, who shall reside within the jurisdiction of said court, to be approved by the court or a judge thereof, in such sum as the court shall direct, conditioned for the payment, in case such petition is dismissed, to the respondent, his or her personal representative, all costs, expenses

" Sᴇᴄ. 3, Acts of Bankruptcy. — *a.* Acts of bankruptcy by a person shall consist of his having (1) conveyed, transferred, concealed or removed, or permitted to be concealed or removed, any. part of his property with intent to hinder, delay or defraud his creditors, or any of them ; or (2) transferred, while insolvent, any portion of his property to one or more of his creditors with intent to prefer such creditors over his other creditors; or (3) suffered or permitted, while insolvent, any creditor to obtain a preference through legal proceedings, and not having at least five days before a sale or final disposition of any property affected by such preference vacated or discharged such preference; or (4) made a general assignment for the benefit of his creditors; or (5) admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt on that ground."

It is patent on the face of this paragraph that it is divided into five different headings, which are designated numerically from 1 to 5. Now, the acts of bankruptcy embraced in divisions numbered 2 and 3 clearly contemplate not only the commission of the acts provided against, but also cause the insolvency of the debtor to be an essential concomitant. On the contrary, as to the acts embraced in enumerations 1, 4 and 5, there is no express requirement that the acts should have been committed while insolvent. Considering alone the text of paragraph *a*, it results that the non-existence of insolvency, at the time of the filing of a petition for adjudication in involuntary bankruptcy, because of the acts enumerated in 1, 4 or 5 (which embrace the making of a deed of general assignment) does not constitute a defence to the petition, unless provision to that effect be elsewhere found in the statute. This last consideration we shall hereafter notice.

The result arising from considering the paragraph in ques-

---

and damages occasioned by such seizure, taking and detention of the property of the alleged bankrupt.

If such petition be dismissed by the court, or withdrawn by the petitioner, the respondent, or respondents, shall be allowed all costs, counsel fees, expenses and damages occasioned by such seizure, taking or detention of such property. Counsel fees, costs, expenses and damages shall be fixed and allowed by the court, and paid by the obligors in such bonds.

tion would not be different if it be granted *arguendo* that the text is ambiguous. For then the cardinal rule requiring that we look beneath the text for the purpose of ascertaining and enforcing the intent of the lawmaker would govern. Applying this rule to the enumerations contained in paragraph *a*, it follows that the making of a deed of general assignment, referred to in enumeration 4, constitutes in itself an act of bankruptcy, which *per se* authorizes an adjudication of involuntary bankruptcy entirely irrespective of insolvency. This is clearly demonstrated from considering the present law in the light afforded by previous legislation on the subject.

Under the English bankruptcy statutes (as well that of 1869 as those upon which our earlier acts were modelled), and our own bankruptcy statutes down to and including the act of 1867, the making of a deed of general assignment was deemed to be repugnant to the policy of the bankruptcy laws, and, as a necessary consequence, constituted an act of bankruptcy *per se*. This is shown by an examination of the decisions bearing upon the point, both English and American. In *Globe Insurance Co.* v. *Cleveland Insurance Co.*, 14 N. B. R. 311; 10 Fed. Cas. 488, the subject was ably reviewed and the authorities are there copiously collected. The decision in that case was expressly relied upon in *In re Beisenthal*, 14 Blatchford, 146, where it was held, that a voluntary assignment, without preferences, valid under the laws of the State of New York, was void as against an assignee in bankruptcy, and this latter case was approvingly referred to in *Reed* v. *McIntyre*, 98 U. S. 513. So, also, in *Boese* v. *King*, 108 U. S. 379, 385, it was held, citing (p. 387) *Reed* v. *McIntyre*, that whatever might be the effect of a deed of general assignment for the benefit of creditors, when considered apart from the bankrupt act, such a deed was repugnant to the object of a bankruptcy statute, and therefore was in and of itself alone an act of bankruptcy. The foregoing decisions related to deeds of general assignment made during the operation of the bankrupt act of 1867, March 2, 1867, c. 176, 14 Stat. 536, or the amendments thereto of June 22, 1874, c. 390, and July 26, 1876, c. 234, 18 Stat. 180; 19 Stat. 102. Neither, how-

ever, the act of 1867, nor the amendments to it, contained an express provision that a deed of general assignment should be a conclusive act of bankruptcy. Such consequence was held to arise, from a deed of that description, as a legal result, of the clause, in the act of 1867, forbidding assignments with "intent to delay, defraud or hinder" creditors and from the provision avoiding certain acts done to delay, defeat or hinder the execution of the act. (Rev. Stat. 5021, par. 4, 7.) Now, when it is considered that the present law, although it only retained some of the provisions of the act of 1867, contains an express declaration that a deed of general assignment shall authorize the involuntary bankruptcy of the debtor making such a deed, all doubt as to the scope and intent of the law is removed. The conclusive result of a deed of general assignment under all our previous bankruptcy acts, as well as under the English bankrupt laws, and the significant import of the incorporation of the previous rule, by an express statement, in the present statute have been lucidly expounded by Addison Brown, J. *In re Gutwillig,* 90 Fed. Rep. 475, 478.

But it is argued that whatever may have been the rule in previous bankruptcy statutes, the present act, in other than the particular provision just considered, manifests a clear intention to depart from the previous rule, and hence makes insolvency an essential prerequisite in every case. To maintain this proposition reliance is placed upon paragraph *c* of section 3, which reads as follows:

"*c.* It shall be a complete defence to any proceedings in bankruptcy instituted under the first subdivision of this section to allege and prove that the party proceeded against was not insolvent as defined in this act at the time of the filing the petition against him, and if solvency at such date is proved by the alleged bankrupt the proceedings shall be dismissed, and, under said subdivision one, the burden of proving solvency shall be on the alleged bankrupt."

The argument is that the words "under the first subdivision of this section" refer to all the provisions of paragraph *a,* because that paragraph, as a whole, is the first part of the section, separately divided, and although designated by

the letter *a*, it is nevertheless to be considered, as a whole, as subdivision 1. But whether the words "first subdivision of this section," if considered intrinsically and apart from the context of the act, would be held to refer to paragraph *a* as an entirety or only to the first subdivision of that paragraph, need not be considered. We are concerned only with the meaning of the words as used in the law we are interpreting. Now, the context makes it plain that the words relied on were only intended to relate to the first numerical subdivision of paragraph *a*. Thus, in the last sentence of paragraph *c* the matter intended to be referred to by the words "first subdivision of this section," used in the prior sentences, is additionally designated as follows: "and under said subdivision one," etc., language which cannot possibly be in reason construed as referring to the whole of paragraph *a*, but only to subdivision 1 thereof.

This is besides more abundantly shown by paragraph *d*, which provides as follows:

"*d*. Whenever a person against whom a petition has been filed as hereinbefore provided under the second and third subdivisions of this section takes issue with and denies the allegations of his insolvency, it shall be his duty to appear in court on the hearing with his books, papers and accounts and submit to an examination, and give testimony as to all matters tending to establish solvency or insolvency, and in case of his failure to so attend and submit to examination the burden of proving his solvency shall rest upon him."

This manifestly only refers to enumerations 2 and 3 found in paragraph *a*, which, it will be remembered, make it essential that the acts of bankruptcy recited should have been committed by the debtor while insolvent. Indeed, if the contention advanced were followed, it would render section 3 in many respects meaningless. Thus, if it were to be held that the words "first subdivision of this section," used in paragraph *c*, referred to the first division of the section — that is, to paragraph *a* as a whole — it would follow that the words "second and third subdivisions of this section," used in paragraph *d*, would relate to the second and third divisions of

the section — that is, to paragraphs *b* and *c.* But there is
nothing in these latter paragraphs to which the reference in
paragraph *d* could possibly apply, and therefore, under the
construction asserted, paragraph *d* would have no significance
whatever. To adopt the reasoning referred to would compel
to a further untenable conclusion. If the reference in para-
graph *c* to the "first subdivision of this section" relates to
paragraph *a* in its entirety, then all the provisions in para-
graph *a* would be governed by the rule laid down in para-
graph *c.* The rule, however, laid down in that paragraph
would be then in irreconcilable conflict with the provisions of
paragraph *d,* and it would be impossible to construe the statute
harmoniously without eliminating some of its provisions.

Despite the plain meaning of the statute as shown by
the foregoing considerations, it is urged that the following
provision contained in paragraph *b* of section 3 operates to
render any and all acts of bankruptcy insufficient, as the basis
for proceedings in involuntary bankruptcy, unless it be proven
that at the time the petition was filed the alleged bankrupt
was insolvent. The provision is as follows: " A petition may
be filed against a person who is insolvent and who has com-
mitted an act of bankruptcy within four months after the
commission of such act." Necessarily if this claim is sound,
the burden in all cases would be upon the petitioning creditors
to allege and prove such insolvency. The contention, how-
ever, is clearly rebutted by the terms of paragraph *c,* which
provides as to one of the classes of acts of bankruptcy, enu-
merated in paragraph *a,* that the burden should be on the
debtor to allege and prove his solvency. So, also, paragraph
*d,* conforming in this respect to the requirements of para-
graph *a,* contemplates an issue as to the second and third
classes of acts of bankruptcy, merely with respect to the in-
solvency of the debtor *at the time of the commission of the act
of bankruptcy.* Further, a petition in a proceeding in invol-
untary bankruptcy is defined in section 1 of the act of 1898,
enumeration 20, to mean "A paper filed . . . . by creditors
*alleging the commission of an act of bankruptcy* by a debtor
therein named."

It follows that the mere statement in the statute, by way of recital, that a petition may be filed "against a person who is insolvent and who has committed an act of bankruptcy," was not designed to superadd a further requirement to those contained in paragraph *a* of section 3, as to what should constitute acts of bankruptcy. This reasoning also answers the argument based on the fact that the rules in bankruptcy promulgated by this court provide in general terms for an allegation of insolvency in the petition and a denial of such allegation in the answer. These rules were but intended to execute the act, and not to add to its provisions by making that which the statute treats in some cases as immaterial a material fact in every case. Therefore, though the rules and forms in bankruptcy provide for an issue as to solvency in cases of involuntary bankruptcy, where by the statute such issue becomes irrelevant, because the particular act relied on, in a given case, conclusively imports a right to the adjudication in bankruptcy if the act be established, the allegation of insolvency in the petition becomes superfluous, or if made need not be traversed.

*Our conclusion, then, is that, as a deed of general assignment for the benefit of creditors is made by the bankruptcy act alone sufficient to justify an adjudication in involuntary bankruptcy against the debtor making such deed, without reference to his solvency at the time of the filing of the petition, the denial of insolvency by way of defence to a petition based upon the making of a deed of general assignment, is not warranted by the bankruptcy law; and, therefore, that the question certified must be answered in the negative; and it is so ordered.*