---

### In re WARD.

(District Court, D. New Jersey. April 10, 1908.)

1. **BANKRUPTCY—INVOLUNTARY PROCEEDINGS—DEFENSE OF INSANITY.**

   It is a defense to a petition in involuntary bankruptcy, which alleges as an act of bankruptcy that defendant conveyed property with intent to hinder, delay, and defraud his creditors, that the alleged bankrupt was insane at the time of such conveyance and incapable of forming such intent.

2. **SAME—EFFECT OF ADJUDICATION OF INSANITY AFTER PETITION FILED.**

   A court of bankruptcy is not deprived of jurisdiction in an involuntary proceeding by an adjudication by a state court, in proceedings instituted after the filing of the petition, that the alleged bankrupt is insane, and has been insane since a time prior to the alleged act of bankruptcy set out in the petition, nor is such adjudication conclusive on the bankruptcy court; but the issue of insanity may be tried under the defense that the defendant did not commit the alleged act of bankruptcy.

3. **SAME—EXAMINATION OF DEFENDANT BEFORE TRIAL.**

   The proceedings on the trial to a jury of the issues joined on a petition in involuntary bankruptcy are the same in form as in the trial of an action at law, and the court is without authority to require the alleged bankrupt to submit himself to an examination as to his sanity before trial.

In Bankruptcy. On motion to strike out part of answer and for an order for examination of the alleged bankrupt, before trial.

Edward A. Day, Robert R. Howard, and Arthur K. Kuhn, for the motion.

Vredenburgh, Wall & Carey, opposed.

LANNING, District Judge. Three creditors of William R. Ward have filed their petition to have him adjudged an involuntary bankrupt. The only act of bankruptcy charged is that:

"William R. Ward is insolvent. and that within four months preceding the date of this petition the said William R. Ward committed an act of bank-

ruptcy, in that he did heretofore, while insolvent, and on the 27th day of November, 1907, and the 5th day of December, 1907, convey to one Benjamin Treacy, of the city of Jersey City, county of Hudson, and state of New Jersey, 11 distinct and separate parcels of land, with the buildings thereon, situated in the cities of Newark and East Orange, county of Essex, and state of New Jersey, including the place of residence of said William R. Ward, with intent to hinder, delay, and defraud the creditors of said William R. Ward, including your petitioners."

An answer was promptly filed by Ward's guardian ad litem, appointed on ex parte proofs of his insanity, setting up, as defenses: (1) That Ward, at the time of committing the alleged act of bankruptcy mentioned in the petition, was so unsound of mind as to be wholly incapable of managing his affairs or of committing the act of bankruptcy charged; (2) that he did not commit the act of bankruptcy charged; and (3) that he is not insolvent. Later, another answer was filed, under an order of leave granted by the court, by Anna Day Ward and Henry L. Poinier, as guardians of the person and estate of Ward, setting up that on December 28, 1907, which was 10 days after the petition in bankruptcy was filed, proceedings under a writ de lunatico inquirendo were instituted against Ward in the Court of Chancery of New Jersey, which resulted in a decree of that court, dated March 2, 1908, confirming the proceedings and the finding of the jury "that the said William R. Ward of East Orange, N. J., was, at the time of taking that inquisition a lunatic of unsound mind and did not enjoy lucid intervals, so that he was not sufficient or capable of the government of himself, his lands, tenements, goods, and chattels, and that he had been in the same state of lunacy and unsoundness of mind from at least the 1st day of May, 1904," and that on March 28, 1908, the orphans' court of Essex county duly appointed Anna Day Ward and Henry L. Poinier as guardians of Ward's person and estate. In this answer there are also set up the same defenses made by the answer of the guardian ad litem. In each of the answers there is a demand that the issues be tried by a jury.

The motions are to strike out the defense of insanity, to limit the issues to be tried by the jury to the second and third defenses, and, if these motions be denied, for an order for the examination of Ward by the petitioning creditors and their experts before trial. The first of these motions is based on the theory that the insanity of an alleged bankrupt is not a good defense, where no adjudication of lunacy has been made prior to the filing of the petition in bankruptcy.

The federal Constitution confers upon Congress the power to establish "uniform laws on the subject of bankruptcies, throughout the United States." The extent to which Congress has exercised that power determines the scope of the power of the federal courts in bankruptcy cases. Section 8 of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 549 [U. S. Comp. St. 1901, p. 3425]) is as follows:

"The death or insanity of a bankrupt shall not abate the proceedings, but the same shall be conducted and concluded in the same manner, so far as possible, as though he had not died or become insane; provided that in case of death the widow and children shall be entitled to all rights of dower and allowance fixed by the laws of the state of the bankrupt's residence."

This section clearly provides that, if the jurisdiction of the bankruptcy court in a given case has once rightfully attached, it cannot be defeated by the subsequent death of the alleged bankrupt, or if he subsequently become insane. Whether jurisdiction exists to administer the estate of an insolvent debtor in bankruptcy, where the alleged bankrupt has been adjudged, after the petition in bankruptcy has been filed, to have been, from a time antedating the alleged act of bankruptcy, a lunatic wholly incapable of managing himself or his estate, must be determined by comparing other provisions of the bankruptcy act with section 8. The creditors in the present case contend that jurisdiction attaches in the present case because section 4b (30 Stat. 547) declares that "any natural person, except a wage-earner, or a person engaged chiefly in farming or the tillage of the soil," may be adjudged an involuntary bankrupt. But no natural person can be so adjudged, in an involuntary proceeding, unless he committed one of the acts of bankruptcy described in section 3a (30 Stat. 546) within four months next before the filing of the petition in bankruptcy. The first subdivision of that section declares that any person shall be held to have committed an act of bankruptcy if he has "conveyed, transferred, concealed, or removed, or permitted to be concealed or removed, any part of his property, with intent to hinder, delay or defraud his creditors, or any of them." That is the act of bankruptcy charged against Ward. But if he has been a lunatic and so unsound of mind as to have been wholly incapable of managing himself or his estate ever since May 1, 1904, he could not have conveyed his lands in November and December, 1907, "with intent to hinder, delay and defraud his creditors." "An intent to hinder or delay creditors," says Judge Bradford, in the Wilmington Hosiery Company's Case (D. C.) 120 Fed. 185, "involves a purpose wrongfully and unjustifiably to prevent, obstruct, embarrass, or postpone them (creditors) in the collection or enforcement of their claims." Without undertaking to determine the exact boundaries of the jurisdiction of our bankruptcy courts in cases against lunatic bankrupts, it is sufficient to say that, in the present case, the defense of insanity cannot be stricken out of the answer.

But is the adjudication in the Court of Chancery of New Jersey conclusive on this court in this proceeding? It would not be so in an action at law against the alleged bankrupt. In such a case, "when an inquisition is admitted in evidence, the party against whom it is used may introduce proof that the alleged lunatic was of sound mind at any period of the time covered by the inquisition." Den v. Clark, 10 N. J. Law, 217, 18 Am. Dec. 417. The same rule applies in equity. Hunt v. Hunt, 13 N. J. Eq. 161; Yauger v. Skinner, 14 N. J. Eq. 389; Hill's Ex'rs v. Day, 34 N. J. Eq. 150; 16 Am. & Eng. Ency. Law, 606. I think it is equally applicable to a bankruptcy case where the adjudication of lunacy is made upon proceedings instituted after the petition in bankruptcy has been filed. The Funk Case (D. C.) 101 Fed. 244, is distinguishable from this because there the adjudication of lunacy was made, and the property of the lunatic put into possession of his guardian, before the petition in bankruptcy was filed. In the Kehler Case (D. C.) 153 Fed. 235, where a petition in involuntary proceedings was filed before the alleged bankrupt had been adjudged

a lunatic, Judge Hazel denied the motion to dismiss the petition because the jurisdiction of the bankruptcy court attached before the alleged bankrupt was adjudged insane, and because of the presumption of the alleged bankrupt's sanity at the time the acts of bankruptcy were committed. It is not necessary to decide, in the present case,. what may be the effect of an adjudication of lunacy and the appointment of a guardian or committee for the lunatic under a writ de lunatico inquirendo before a petition in bankruptcy is filed against the lunatic. It may be that in such a case the bankruptcy court acquires no jurisdiction; but, where a person is adjudged a lunatic under proceedings instituted after a petition in bankruptcy has been filed against him, the jurisdiction of the bankruptcy court to try the issues involved in the bankruptcy proceeding seems to me clear. In such a case, its jurisdiction attaches upon the filing of the petition in bankruptcy. If the alleged bankrupt was, at the time of committing the alleged act of bankruptcy charged in the petition filed against him, so insane that he did not understand the nature of the act, its commission should be denied on the ground that, being insane, he could not commit it. On the trial of such an issue, the adjudication of lunacy may, perhaps, be offered as prima facie evidence of insanity, provided it shows lunacy at the time of the commission of the alleged act of bankruptcy.

It will be observed, from what has been said, that, in such a case as the present one, the defense that the alleged bankrupt did not commit the act of bankruptcy charged against him involves the question of his insanity. As already stated, the only act of bankruptcy charged here is that the alleged bankrupt conveyed certain of his lands with intent to hinder, delay, or defraud his creditors. Evil intent is an essential element of the act charged. Section 19 (30 Stat. 551) of the bankruptcy act gives to an alleged bankrupt the right to a trial by jury of the question of his insolvency and of the question concerning his commission of an act of bankruptcy, provided a written application for such trial be made. Such application has been made. The question of the alleged bankrupt's insanity will therefore be submitted to the jury as an essential part of the defense that he did not commit the act of bankruptcy charged.

Although it is alleged in the petition that Ward was insolvent at the time of executing the deeds of conveyance, that allegation is immaterial, and will not be involved in the issues to be tried. There is also an allegation that he was insolvent at the time of the filing of the petition. That is a proper, if not a necessary, allegation, since section 3c of the bankruptcy act makes the defense of solvency at the time of filing the petition, in a case like the present one, a good defense. West Company v. Lea, 174 U. S. 590, 19 Sup. Ct. 836, 43 L. Ed. 1098; Elliott v. Toeppner, 187 U. S. 330, 23 Sup. Ct. 133, 47 L. Ed. 200.

The issues to be tried by the jury are therefore: (1) Whether the alleged bankrupt was insolvent at the time of the filing of the petition in bankruptcy, and (2) whether the particular act of bankruptcy charged was committed by him. The latter issue will necessarily involve the question of his insanity.

One more point remains to be considered, and that is whether the petitioning creditors may have an order permitting them and their experts to examine the alleged bankrupt before trial. Counsel for the alleged bankrupt's guardians object to the allowance of such an order. In my judgment it cannot be allowed. In Union Pacific Railway Co. v. Botsford, 141 U. S. 250, 11 Sup. Ct. 1000, 35 L. Ed. 734, Mr. Justice Gray said:

"In the English common-law procedure act of 1854, enlarging the powers which the courts had before, and authorizing them, on the application of either party, to make an order 'for the inspection by the jury, or by himself, or by his witnesses, of any real or personal property, the inspection of which may be material to the proper determination of the question in dispute,' the omission to mention inspection of the person is significant evidence that no such inspection, without consent, was allowed by the law of England. Even orders for the inspection of documents could not be made by a court of common law, until expressly authorized by statute, except when the document was counted or pleaded on, or might be considered as held in trust for the moving party. * * * The only power of discovery or inspection, conferred by Congress, is to 'require the parties to produce books or writings in their possession or power, which contain evidence pertinent to the issue, in cases and under circumstances where they might be compelled to produce the same by the ordinary rules of proceeding in chancery,' and to nonsuit or default a party failing to comply with such an order. Rev. St. § 724 (U. S. Comp. St. 1901, p. 583). And the provision of section 914 (U. S. Comp. St. 1901, p. 684) by which the practice, pleadings, and forms and modes of proceeding in the courts of each state are to be followed in actions at law in the courts of the United States held within the same state, neither restricts nor enlarges the power of these courts to order the examination of parties out of court."

That case, it is true, was one in which an action at law was brought for the recovery of personal injuries sustained by the plaintiff; but its principle is applicable here. Where there is a state statute, not in conflict with any act of Congress authorizing an order for the physical examination of a plaintiff before the trial of an action brought to recover damages for injury to the person—like the New Jersey act on that subject—a federal court may make the order. Camden & Suburban Railway Co. v. Stetson, 177 U. S. 172, 20 Sup. Ct. 617, 44 L. Ed. 721. But if a state statute provides that the physical examination before trial can only "be procured in the same way and as part of the examination of the party before trial"—as the New York statute does—it is doubtful if it can be enforced in a federal court. Hanks Dental Ass'n v. Tooth Crown Co., 194 U. S. 303, 310, 24 Sup. Ct. 700, 48 L. Ed. 989.

The proceedings on the trial of the present issue will be the same, in form, as in the trial of an action at law. The judgment entered on the verdict of the jury can be reviewed only on a writ of error. If either party feels aggrieved by the rulings of the court in the course of the trial, exceptions must be taken and sealed as the basis on which to prosecute a writ of error. Elliott v. Toeppner, 187 U. S. 327, 23 Sup. Ct. 133, 47 L. Ed. 200.

It follows that, as there is no statutory authority for an order to require an alleged bankrupt to submit himself to an examination before trial, the application for such an order must be denied.

The motions of the petitioning creditors will all be denied. They may file their replication and bring the case to trial in the usual course of procedure.