In re CAYNE CONST. CO., Inc.

In re CAYNE.

Nós. 21626, 21627.

District Court, E. D. New York.

April 6, 1932.

Samuel C. Duberstein, of New York City (Meyer D. Siegel and Max Schwartz, both of New York City, of counsel), for bankrupts.

Benjamin & Benjamin, of Liberty, N. Y. (A. David Benjamin, of Liberty, N. Y., of counsel), for petitioning creditors.

Milbank, Tweed, Hope & Webb, of New York City (John G. Clancy, of New York City, of counsel), for intervening creditor Cross, Austin & Ireland.

Harry L. Schulman, of Brooklyn, N. Y., for intervening creditor Kenlon Coal Co.

GALSTON, District Judge.

These two cases under stipulation were tried together.

The petitions were filed on January 8, 1932, and the answers raise the issue of insolvency and deny the commission of any act of bankruptcy, and also deny that the petitioning creditors, Honahan Company, Inc., E. Smolka Plumbing Supply Company, and Gordon Plumbing & Heating Supply Company, Inc., had provable claims. Thereafter additional creditors, Cross, Austin & Ireland Lumber Company and Kenlon Coal Company, were, by order of the court, joined as petitioning creditors, the former in both cases, and the latter in the matter of Cayne Construction Company, Inc., only.

The trial was a lengthy one. The evidence shows that on November 1, 1931, the following properties were owned by the Cayne Construction Company, Inc.: 3285 Thirty-Third street; 3252 Thirty-Third street; 3286 Thirty-Fifth street; Thirty-Second street and Skillman avenue; 3420 Thirtieth street; 3419 Twenty-Ninth street; and 3414 Thirtieth street. Of the foregoing, the first, second, and fourth listed were transferred to Ida Siegel, the mother-in-law of the bankrupt Cayne, who was also president of the Cayne Construction Company, Inc., in November, 1931; the property at 3286 Thirty-Fifth street was on November 2, 1931 transferred to Joseph Schulder, Cayne's brother-in-law. In no case was any consideration paid.

In addition, a deed dated November 24, 1931 of properties at 3420 Thirtieth street, 3419 Twenty-Ninth street, and 3414 Thirtieth street, was executed by the Cayne Construction Company, Inc., and delivered to John B. Connelly et al., in pursuance of a trust agreement between the Cayne Construction Company and certain trustees named therein. This agreement contemplated the sale of these properties and a distribution of the proceeds among the creditors named in the schedule attached to the agreement. This list of creditors did not include all of the creditors of the alleged bankrupt.

As to Cayne individually, it may be stated that he admits that at the time of the filing of the petition in bankruptcy he had no personal property; also that on November 2, 1931 he had deeded a farm owned by him at Munsey, N. Y., to one David Brownman.

The Cayne Construction Company, Inc., failed to produce satisfactory books of account; but it appears that, in addition to its mortgage indebtedness of $497,000 on the three properties transferred to the trustees, there was about $200,000 of indebtedness.

In view of the failure of the bankrupt to produce adequate books of accounts or to account satisfactorily for missing data from which an accurate and independent statement of its condition could be arrived at, the burden to prove solvency rests upon the bankrupts. Bogen & Trummel v. Protter (C. C. A.) 129 F. 533.

That burden, I think, the bankrupts have failed to meet. The only assets which may be enumerated are the three apartment houses. Testimony bearing on their market value given by experts for both the petitioning creditors and the bankrupts varies considerably. Indeed, it is perhaps not easy to understand how the equities in these houses are regarded as assets, because admittedly the properties were deeded to trustees to sell for the benefit of the listed creditors. Of course it may be contended that those equities may be sufficient to pay, not only the claims in full of the listed creditors, but of all other creditors, and leave a surplus for the bankrupts. However, the proof in that regard is most unsatisfactory. Under forced sale at the present time it is wholly problematical what the apartment houses would bring. These are times of dire stress. It is wholly a buyer's market. Giving the bankrupts the benefit of a valuation of $20,000 for the small house, it becomes necessary to establish a value of $340,000 each for the two larger buildings in order to make out a case of solvency.

I think the best that can be spelled out

of the testimony given by Mr. Stoutenburgh, an appraiser who acted for the Long Island Savings Bank, would be a valuation of $334,000 for each house.

As against this figure it would appear from the testimony of the real estate experts called by the creditors, particularly that of Dr. Breger, that a fair valuation of each building was $285,000. I think the method of calculation of the witnesses Breger and Rudinger, based on the rental return, is much more accurate than any other method suggested, in view of the lowered cost of building construction and the fall in land values since the time the apartment houses were constructed.

Using roughly that method and taking a figure of $50,000 per house as the maximum rental when fully rented, which was the rental figure set forth in the sworn statement of the bankrupt filed with the city of New York for tax purposes, and allowing a ratio of six times such gross rental value, a market value of $300,000 for each house would apparently not be far out of the way; or allowing a mean between the Stoutenburgh and Breger figures, a valuation of $319,500 would be reached. In the circumstances I think no higher figure should reasonably be conceded.

Based on such an appraisal of its assets, the bankrupts would lack solvency by a matter of $41,000.

If such then was the financial condition of the bankrupts in November, 1931, then the transfers made of their properties as hereinbefore related were preferential and constituted acts of bankruptcy. I think the transaction with the creditors was in effect an assignment, and, therefore, an act of bankruptcy. (Bankruptcy Act § 3, Title 11, § 21, U. S. Code [11 USCA § 21]). George M. West Co. v. Lea, 174 U. S. 590, 19 S. Ct. 836, 43 L. Ed. 1098.

The remaining question to be considered is the status of the petitioning creditors. It is urged by the bankrupts that the petitioning creditors are secured.

The National Bankruptcy Act, § 1, subd. 23, 11 USCA § 1 (23), defines who shall be regarded as a secured creditor: " 'Secured creditor' shall include a creditor who has security for his debt upon the property of the bankrupt of a nature to be assignable under this title, or who owns such a debt for which some indorser, surety, or other persons secondarily liable for the bankrupt has such security upon the bankrupt's assets."

The petitioning creditors, Honahan Company, Inc., E. Smolka Plumbing Supply Company, and Gordon Plumbing & Heating Supply Company, Inc., have claims based on their holding of promissory notes executed by the Cayne Construction Company, Inc., made payable to the Inter-City Plumbing & Heating Company, Inc., and indorsed by that corporation. Testimony in respect to these notes shows that the petitioning creditors in accepting them took them not as payment, but merely credited their respective accounts with the Inter-City Plumbing & Heating Company, Inc.

On November 21, 1931, the Inter-City Plumbing & Heating Company, Inc., filed a mechanic's lien in the office of the county clerk of Queens county, making a claim to the effect that there was due and unpaid to it, for work and materials furnished to the Cayne Construction Company properties, the sum of $21,900. That amount included the indebtedness represented by the aforesaid notes. It is clear, therefore, that these petitioning creditors are secured creditors within the definition of the Bankruptcy Act.

The petition of Cross, Austin & Ireland Lumber Company, an intervening creditor, shows that that company holds promissory notes made by the Cayne Construction Company, Inc., in the aggregate principal sum of $3,980.39; and that it filed as security for its claim a mechanic's lien on October 9, 1931. This creditor is, therefore, a secured creditor.

The only unsecured creditor is the Kenlon Coal Company, having a claim of $2,789.72. This claim is not secured.

Unless, therefore, prior to the entry of an order of adjudication, these secured creditors waive their security, the petition in bankruptcy must be dismissed. In re Macklem (D. C.) 22 F.(2d) 426; Greenville Banking & Trust Co. v. Selcow (C. C. A.) 25 F.(2d) 78.

The petitioning creditors may have ten days from the filing of this opinion within which to file a notice of the surrender of their security. On their failure so to do, the petition will be dismissed; if the surrender is made, the petition will be sustained.

Settle order on notice.