## CROSS et al. v. GLOBE–BOSS–WORLD FURNITURE CO. et al.

### No. 6693.

Circuit Court of Appeals, Ninth Circuit.

Feb. 13, 1933.

George D. Blair, J. Gilbert Fall, and M. L. Rabbitt, all of Los Angeles, Cal., for appellants.

Bicksler, Parke & Catlin and S. S. Gelberg, all of Los Angeles, Cal., for appellees.

C. A. Ballreich, of Los Angeles, Cal., amicus curiæ.

Before WILBUR, SAWTELLE, and MACK, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an adjudication of bankruptcy upon a petition brought by three creditors alleging upon information and belief that the bankrupt, Cross-Oswald, Limited, "is a copartnership consisting of Robert C. Cross and George Oswald." As an act of bankruptcy petitioners alleged that the bankrupt "did, on or about the 24th day of June, 1931, make a general assignment for the benefit of its creditor"; that the bankrupt "is now insolvent"; and that within four months preceding the filing of the petition had made certain preferential payments. The only peculiarity in the petition was that petitioner, in addition to alleging upon information and belief the existence of such copartnership, stated, "that your petitioners have not sufficient knowledge or information upon which to state the capacity or legal status of the alleged bankrupt," and in the caption of the petition described the bankrupt as "a copartnership, corporation or association." The petition was answered by "Cross-Oswald, Ltd., a corporation." There was no answer filed on behalf of the alleged copartnership or the individuals alleged to compose the same, Robert C. Cross and George H. Oswald. The answer of the corporation alleged that it was a bankrupt, but denied that the bankrupt is a copartnership consisting of the above mentioned copartners. It denied the preferential payments alleged in the petition, but did not deny transfer by the bankrupt by general assignment on June 24, 1931, to L. Boteler, as alleged in the complaint. It will be observed that thus the corporation admitted a general assignment for the benefit of creditors, and also, by failure to deny the allegation in the petition, admitted that it was insolvent at the time of the filing of the petition and also at the time of the above mentioned transfer.

The issues were referred to a referree in bankruptcy as special master. His report states that the petitioning creditors appeared by their counsel of record and the bankrupt appeared by its counsel of record; that the issue raised and to be determined was whether or not there existed a copartnership consisting of Robert C. Cross and George

H. Oswald, or whether the entity of the bankrupt was Cross-Oswald, Limited, a California corporation.

The petitioning creditors offered as witnesses Robert C. Cross and George H. Oswald and their attorney, George D. Blair. The special master reported his findings and conclusions to the trial judge as follows:

"Your special master finds that Robert C. Cross and George Oswald entered into an agreement to operate a furniture business in the County of Los Angeles, State of California, Oswald putting up the money and Cross putting up his experience as a furniture man. That credit statements were issued showing that Oswald was a partner, but stating that they expected to incorporate. Cross and Oswald did cause their attorney, George D. Blair, to have prepared, executed and filed in the office of the Secretary of State of California, Articles of Incorporation under the corporate name, Cross-Oswald, Ltd. It was the intent of the attorney to incorporate said company under the limited liability created by the last legislature of the State of California eliminating stockholders' liability. No stock was ever issued by the corporation and it never did any business as a corporation. The incorporators were dummies used for the purpose of convenience. The corporation, Cross-Oswald, Ltd., never functioned as a corporation. The corporation, as such, or any person on its behalf, never petitioned the corporation commissioner for leave to issue any stock.

"Your special master finds, therefore, that Robert C. Cross and George Oswald were copartners.

"It is stipulated that George Oswald is in funds in excess of the liabilities of this partnership, and therefore, under the laws of the State of California, each partner being primarily liable for all the debts, Oswald is liable for all the debts of the partnership of Cross and Oswald.

"This would terminate this proceeding ordinarily with a recommendation that there be no adjudication, but for the fact that it is alleged in the creditors' petition that the bankrupts did, on or about the 24th day of June, 1931, make a general assignment for the benefit of its creditors. Such act of bankruptcy is not denied. The facts alleged with respect to it are not denied. Insolvency is not one of the necessary elements under the law to be alleged or proven, or to be a factor under this act of bankruptcy. Any assignment for the benefit of creditors, whether the assignor be solvent or insolvent, is an act of bankruptcy.

"The bankrupts herein chose to do business under the name of the corporation which they had not completed, Cross-Oswald, Ltd., and their act in that form is the act of the partnership. Therefore, it should be held that Robert C. Cross and George Oswald, a copartnership, be adjudicated.

"The allegations of other acts of bankruptcy in every other respect * * * have not been proven as acts of bankruptcy, for the reason that said partnership has not been proven to be insolvent, and the finding on the question of solvency is in favor of the partnership. * * * As conclusions of law and recommendations, your special master concludes that Robert C. Cross and George Oswald were copartners doing business as Cross-Oswald, Ltd. That in form said parties attempted to create a corporation but that said corporation was never created in good faith, never completed and it did not function."

Exceptions were filed to the report by "Robert C. Cross, George Oswald and Cross-Oswald, Ltd.," by the same attorney who had appeared by answer for the corporation, Cross-Oswald, Limited. These exceptions were overruled by the trial judge and a decree was ordered and entered adjudicating a copartnership Cross-Oswald, Limited, composed of Robert C. Cross and George Oswald, a bankrupt.

It is conceded on this appeal that the corporation, Cross-Oswald, Limited, was incorporated and the date of the incorporation is the date of the filing of the articles of incorporation with the Secretary of State, to wit, on the 10th day of February, 1930. In accordance with the law of California the articles of incorporation gave the corporate name, defined the purposes for which it was organized as "buying, selling, manufacturing and dealing in furniture of all kinds," etc., giving its principal place of business as Los Angeles, Cal., and specifying the number of its directors to be three and the name of the directors for the first year as George D. Blair, the attorney who represents appellants herein, and two of his office employees; the capital stock was specified as $20,000, and the number of shares subscribed three, one by each of the three directors. On March 19, 1930, by-laws were adopted by these three stockholders. On the same date, after completing the organization of the corporation, C. V. Ivy resigned as director and R. C. Cross was appointed a director in his place and stead, and also appointed as secretary and treasurer. Thereupon Dorothy Pitts tendered her resignation and George H. Os-

wald was elected a director in her place; George D. Blair resigned as president of the corporation and George H. Oswald was elected president in his stead; R. C. Cross was appointed manager of the corporation at a salary of $300 per month, Mrs. Carey assistant secretary at a compensation of $125 per month; a resolution was introduced reciting that George H. Oswald had advanced and lent $1,611.80 to the corporation up to and including the 19th of March, 1930, and authorizing the execution and delivery of a note to him for that amount bearing 7 per cent. interest, payable semiannually. The Bank of America was designated as depositary for the funds of the corporation and R. C. Cross as secretary of the corporation was authorized to withdraw said funds from the bank upon checks signed by him; he was also authorized to indorse checks and other instruments for deposit, etc. The secretary of the corporation was authorized to take necessary steps to secure from the corporation commissioner authority to sell its stock. This authority was not procured, and a little over a year later, on June 24, 1931, at a meeting of the board of directors of the corporation a resolution was adopted authorizing the president and secretary to assign all the assets of the corporation to L. Boteler for the benefit of the creditors of the corporation. In pursuance of this resolution the assignment alleged in the petition and admitted by the answer was duly executed, this assignment constituting the act of bankruptcy upon which the master in the trial court relied in determining the bankruptcy of the alleged copartnership.

This assignment covers all the property of the assignor, real and personal, including stock of merchandise, store furniture and fixtures, books of account, bills receivable, insurance policies, and personal property "of every kind and nature situate or pertaining to that certain business now owned and conducted by said assignor at 1024 Santee Street in the city of Los Angeles, California," except leases and leasehold interest in real estate. This assignment was executed by Cross-Oswald, Limited, by George Oswald, president, and Robert C. Cross, secretary, and has attached thereto the corporate seal reading, "Cross-Oswald, Ltd., incorporated February 10, 1930."

It was stipulated before the referee and found by the referee to be the fact that the copartnership was not insolvent at the time of the above assignment for the benefit of creditors alleged in the petition or at the time of the trial. The adjudication of bank-

ruptcy was based upon the fact that the assignment for the benefit of creditors having been made by a solvent copartnership was an act of bankruptcy justifying such an adjudication notwithstanding the fact that the copartnership was not insolvent. West Co. v. Lea, 174 U. S. 590, 19 S. Ct. 836, 43 L. Ed. 1098. An insurmountable difficulty in this conclusion arises from the fact that the assignment relied upon does not purport to be an assignment by the alleged copartnership and was never intended as such. It is an assignment by a corporation.

We are unable to perceive how the act of the corporation can be attributed to the copartnership. There was a corporation de jure, a corporation de facto, and the assignment was a corporate act. If there was also a copartnership composed of Cross and Oswald, as found by the referee and by the trial court, that copartnership did not make an assignment for the benefit of creditors and did not commit the act of bankruptcy relied upon as a basis for declaring the partnership bankrupt. There is no indication that Mr. Oswald, who is described in a letter issued by his copartner as a very wealthy man, would have participated in the assignment as a copartner. The record with regard to this matter is not free from difficulty because of the fact already indicated, that the copartnership never appeared in the proceedings prior to the referee's report, but inasmuch as the copartners filed exceptions to that report and appeared before the District Court upon their exceptions to the finding of the special master they have submitted to the jurisdiction of the court, but they cannot be deemed to have admitted by their exceptions that which they expressly denied therein, namely, that they were copartners acting under the firm name of Cross-Oswald, Limited, or otherwise, or that they had made an assignment for the benefit of their creditors.

The theory of the special master is sufficiently indicated by the excerpt we have quoted from his findings, that is, that Robert C. Cross and George H. Oswald became copartners; that in the organization of the copartnership both partners contemplated acting through the corporation; but that the purpose was never effectuated by reason of the failure to issue stock. The finding that the corporation did no business was predicated on the theory that the organization was not perfected; consequently, it is held that by their co-operation in the establishment and the conduct of the furniture business Robert C. Cross and George H. Oswald became and were copartners. The difficulty with this

conclusion is that there is no evidence whatever to support it. The petitioners who filed the bankruptcy petition called as their witnesses those who had formed the copartnership, and their testimony is to the effect that Mr. Oswald intended to become a stockholder in the newly organized corporation which was organized by his attorney at his instance for the purpose of avoiding responsibilities of a partner, and that the corporation was one of limited liability of stockholders, for the purpose of avoiding the usual liability as a stockholder; that the agreement was that Oswald should lend money to the corporation; that the corporation should repay this money to him with interest; and that as an additional consideration for his loans he was to receive, without further consideration, stock equivalent at par to the amount he had lent to the corporation. It was evidently intended to sell the stock of the corporation to the public. Notwithstanding the fact that the stock was not sold, the corporation proceeded to engage in the furniture business, as its articles of incorporation authorized it to do. Mr. Oswald at no time held himself out as a copartner of Robert C. Cross, nor did he knowingly permit Cross to make such representations. It was stated repeatedly during the hearings before the master that the petitioners proposed to show "an ostensible partnership." Mr. Geldberg, acting for them, stated: "I am going to show ostensible partnership. I am going to show representations at least by this one partner [Cross] that there was a partnership." The master correctly ruled on that question as follows: "Of course you cannot bind his other partner unless you prove ostensible partnership. Ostensible partnership is based upon estoppel." It appears from the evidence that some money was advanced to Cross by Oswald in preparing the premises in which the business was to be conducted. The show room was opened March 1, 1930, after the formation of the corporation; the exact date of the execution of the lease of the premises is not stated, but it was negotiated in January, 1930, while the corporation was in process of formation. There is no evidence whatever to connect Oswald as an individual with the furniture business other than his participation in the organization of the corporation; the lending of money by him to Cross which, both testified, was for the corporation and which later was acknowledged as a debt by the corporation; a letter introduced by the petitioners upon the letterhead of "Robert C. Cross, Furniture Manufacturers' Agent since 1905, 1206 Santee Street, Los Angeles, California,"

directed to "Dallastown Furniture Company, Dallastown, Pa.," one of the petitioning creditors, in which he states:

"We have had the carpenters working on our display floor for a week, and it looks as if they will be at least another ten days before they get through, and then the painters will start, and it looks as if it will be about the 15th day of March before we will be set to do business, and we won't have all of our stock here much before that time. * * *

"We will have our financial statement out shortly, and I am sure you will be pleased to know that I have connected with me a man who is worth at least two million dollars, he is not going to be active in this business as he has a very large business of his own, he is in the paving business here, and if you will look in Dunn's or Bradstreet's under the name of Oswald Bros., paving contractors, you will see that they are rated very high. Mr. George Oswald, who is my partner in this business, has put up to start $20,-000, and as we need more he will see that we get it. Our intention is to buy most everything in a short time after we get started, that is if we can get a discount from the factories that will warrant such. We have incorporated for $50,000 and he and myself have all of the stock, of course except one share we have given to our office man to complete the corporation."

This letter is signed, "Cross-Oswald, Ltd., by (s) R. C. Cross." This declaration was of course not binding on Oswald, and both he and Cross testified that he knew nothing about the letter. On the contrary, Robert Cross testified that the only arrangement he had with Mr. Oswald was for a loan. It is manifest from the testimony of both Mr. Oswald and Mr. Cross, and their attorney, that the conversation between the two about going in together related wholly to the going in as stockholders in the corporation which was to be formed.

Appellees contend that the corporation was not organized in good faith. We are unable to perceive exactly how this would change the situation. The argument is that under the so-called trust fund doctrine the corporation is conclusively presumed to have sought credit on the faith of its apparent capital, citing 6-a Cal. Jur. p. 894, § 511. Counsel for appellees quotes therefrom: "The doctrine applies only to those assets which were contributed, *or should have been*, by the stockholders in payment of their subscriptions." Counsel, however, neglects to state what effect this doctrine would have up-

on the proposition involved in this case, namely, whether or not Cross-Oswald, Limited, was a corporation or a copartnership.

The real question which we have already discussed and disposed of is whether or not the business was done by the corporation or by a copartnership. There was no copartnership; hence, the business was done by the corporation. The assignment relied upon by the petition as an act of bankruptcy was by the corporation and not by a copartnership.

Appellees rely upon the rule that the findings of a master concurred in by the trial judge "will not be set aside and reversed on appeal unless clear and manifest error appears." The error here is clear, manifest, and inescapable. The findings of the referee created an entity which did not exist and ignored an entity which did exist. They declared an entity bankrupt which had committed no act of bankruptcy, and which, if it existed, was neither insolvent nor bankrupt. In re Samuels (C. C. A.) 215 F. 845, 849.

Appellees also rely upon the rule that courts of equity look through the corporate form to the real substance of a transaction for the purpose of doing justice. There is no question about this rule which is well stated in Abney v. Belmont Country Club Properties, 100 Cal. App. 12, 279 P. 829; Clark v. Millsap, 197 Cal. 765, 242 P. 918; Hotaling v. Hotaling, 193 Cal. 368, 224 P. 455, 56 A. L. R. 734, all cited by appellees. The only application of this principle to the facts in the case at bar made by the appellees in their brief is that the bankruptcy court in the instant case should look through the corporate fiction to the true status of Cross-Oswald, Limited, and that the special master and District Court were correct in holding the same to be a partnership. This is merely another way of saying that when Mr. Oswald expressed his willingness to accept stock in a corporation and lend money to the corporation he must nevertheless be held to be a copartner in a business ostensibly conducted by the corporation. This contention begs the real question involved in this case, namely, what was the relationship between Cross and Oswald? Were they officers, directors, and stockholders in the corporation, co-operating as such, or were they partners? The actions of individuals consistent with and predicated upon their relation in a corporation cannot be twisted from their setting and measured in the same manner that they would be if there were no corporation.

The order adjudicating a copartnership composed of Robert C. Cross and George H. Oswald bankrupt is reversed. The corporation Cross-Oswald, Limited, having appeared and admitted an act of bankruptcy and conceded its insolvency, petitioners having expressed a desire that Cross-Oswald, Limited, whether a copartnership, corporation, or association, should be adjudged bankrupt, the trial court is directed to enter an order adjudicating Cross-Oswald, Limited, the corporation which made the assignment to Boteler on June 24, 1931, to be a bankrupt, and to take such further proceedings and to make such further orders in the bankruptcy matter as are not inconsistent herewith.